**Bobby G. BAIN, Respondent,**

v.

**Quentin WILSON, Director of Revenue for the Missouri Department of Revenue, Appellant.**

No. WD 58976.

Missouri Court of Appeals,
Western District.

Feb. 26, 2002.

Jeremiah W. (Jay) Nixon, Atty. Gen., Mark L. Langworthy, Asst. Atty. Gen., Jefferson City, for appellant.

Kenneth M. Hayden, Versailles, for respondent.

Before ULRICH, P.J., BRECKENRIDGE, J. and ELLIS, J.

ROBERT G. ULRICH, Presiding Judge.

The Director of Revenue [hereinafter "Director"] appeals the judgment of the trial court reinstating the driving privileges of Bobby Bain and setting aside the Director's order suspending Mr. Bain's driver's license under section 302.505.1, RSMo 2000, for driving a motor vehicle with a blood alcohol concentration of at least .10 percent by weight. The trial court found that the Director did not have probable cause to believe Mr. Bain was driving a motor vehicle while the alcohol concentration in his blood was .10 or more by weight. The Director claims that the trial court misinterpreted the law and that its judgment was against the weight of the evidence. The judgment of the trial court is affirmed.

## I. Facts

Following the Director's suspension of Mr. Bain's driver's license, Mr. Bain filed a petition for trial de novo in the Circuit Court of Morgan County. The following evidence was adduced at trial.

At approximately 10:15 p.m. on the night of November 18, 1999, Missouri State

Highway Patrol Trooper B.J. McMullin responded to an automobile accident on Missouri Highway 5 in Morgan County. From observing the accident scene, Trooper McMullin determined that a full-size Dodge van had been proceeding north on Highway 5 when it crossed the centerline and struck a southbound Chevy Venture minivan. Trooper McMullin then spoke with Charles Manton, who pointed out to him a man that he had found in the Dodge van when he arrived at the scene. Trooper McMullin asked Mr. Manton if the man was the only person in the van, and Mr. Manton responded, "Yes, as far as I could tell."

Trooper McMullin made contact with the man, who identified himself as Bobby Bain. During his conversation with Mr. Bain, Trooper McMullin noticed that Mr. Bain's eyes were bloodshot, his speech was slurred, and his breath smelled of alcohol. Trooper McMullin asked Mr. Bain if he had been drinking alcohol, and Mr. Bain responded that he had drunk a few beers. Because the traffic conditions at the scene of the accident were dangerous, Trooper McMullin asked Mr. Bain to accompany him to the Laurie, Missouri, Police Department to conduct field sobriety tests. Mr. Bain agreed.

After arriving at the Laurie Police Department, Trooper McMullin instructed Mr. Bain to perform the one-leg stand field sobriety test. Mr. Bain failed the test, and Trooper McMullin observed nothing about Mr. Bain that indicated he was physically incapable of complying with his instructions. At the conclusion of his observations, Trooper McMullin determined that Mr. Bain was intoxicated and placed him under arrest for driving while intoxicated. Approximately forty-five minutes elapsed between the time Trooper McMullin first encountered Mr. Bain at the accident scene and when Mr. Bain was arrested at the Laurie Police Department. After being advised of his Miranda and Missouri Implied Consent Law rights, Mr. Bain agreed to submit to a breath test. The test was conducted and showed that Mr. Bain's blood alcohol content was .162 percent.

Mr. Manton also testified at trial. He stated that he and a friend were driving northbound on Highway 5 on the night of November 18 when they came upon the accident. Mr. Manton approached the Dodge van, looked inside, and observed a man lying on his back on the floor between the two captain's chairs. The man's head was lying towards the back of the van and his feet towards the front. Mr. Manton saw no one else in the van. Mr. Manton tried to open the doors of the van several times to access the man in the vehicle but was unsuccessful because the doors were locked. While attempting to open the doors of the van, Mr. Manton saw a man come out of a nearby residence. Mr. Manton spoke with the man, and the man told him that he had heard the accident and had called for an ambulance. Shortly thereafter, two ambulances, the fire department, and Trooper McMullin arrived at the scene.

Following the hearing, the trial court ruled that the Director did not have probable cause to believe that Mr. Bain was driving a motor vehicle while the alcohol concentration in his blood was .10 percent or more by weight. The trial court accordingly set aside the Director's suspension of Mr. Bain's driving privileges. The Director now appeals that decision.

## II. Standard of Review

The standard of review for a judge-tried case, as this one was, is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), which interprets what is now Rule 84.13(d). As the rule is

interpreted, the judgment of the trial court will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* When reviewing a judgment in a driver's license revocation case, the evidence and reasonable inferences drawn therefrom are viewed in the light most favorable to the judgment, and all evidence and inferences to the contrary are disregarded. *Callendar v. Dir. of Revenue,* 44 S.W.3d 866, 868 (Mo.App. W.D.2001).

### III. Point Relied On

In his sole point on appeal, the Director contends that the trial court erred in setting aside the Director's suspension of Mr. Bain's driving privileges. The Director insists that the trial court misinterpreted the law and that its judgment was against the weight of the evidence in that the Director proved, by a preponderance of the evidence, an unrebutted prima facie case for suspension of Mr. Bain's license under section 302.505.1.

 Section 302.505.1, RSMo 2000, provides in pertinent part:

The department shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was ten-hundredths of one percent or more by weight. . . .

Under this statute, the Director makes a prima facie case for suspending or revoking a driver's license by establishing by a preponderance of the evidence that (1) the arresting officer had probable cause to arrest the driver for driving while intoxicated, and (2) the driver's blood alcohol content was at least .10 percent at the time of the arrest. *Testerman v. Dir. of Revenue,* 31 S.W.3d 473, 475 (Mo.App. W.D. 2000). Once the Director has made a prima facie case, the burden shifts to the driver to present evidence to rebut it by a preponderance of the evidence. *Id.* at 475–476. Preponderance of the evidence "is defined as that degree of evidence that 'is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows the fact to be proved to be more probable than not.' " *State Bd. of Nursing v. Berry,* 32 S.W.3d 638, 642 (Mo. App. W.D.2000)(quoting *Vaught v. Vaughts, Inc./Southern Missouri Constr.,* 938 S.W.2d 931, 941 (Mo.App. S.D.1997)).

 Mr. Bain's blood alcohol content undisputedly exceeded .10 percent by weight at the time of his arrest.[1] The only issue on appeal, therefore, is whether the evidence established that Trooper McMullin had probable cause to arrest Mr. Bain for operating a motor vehicle while intoxicated, a requirement of section 302.505.1. Probable cause that an individual was driving while intoxicated, for purposes of a driver's license revocation proceeding, exists when the facts and circumstances would warrant a person of reasonable caution to believe that an offense has been committed. *Chinnery v. Dir. of Revenue,* 885 S.W.2d 50, 51 (Mo.App. W.D.1994). "The standard for determining probable cause is the probability of criminal activity, not a prima facie showing of guilt." *Wil-*

---

1. The results of the breath test were offered at trial and objected to on the ground that the test was inadmissible because probable cause was not proved to justify Mr. Bain's arrest before the test was administered. The trial court sustained the objection. An offer of proof was made that showed Mr. Bain's blood alcohol content was .162 percent. In their briefs, both parties concede that the evidence would have proven Mr. Bain's blood alcohol content to have been .162 percent by weight if the objection had been overruled.

cox v. Dir. of Revenue, 842 S.W.2d 240, 243 (Mo.App. W.D.1992). "The practical considerations of everyday life on which reasonable people act, not the hindsight of legal technicians, govern the probable cause determination." *Id.* Probable cause is evaluated in relation to the circumstances, as they would have appeared to a prudent, cautious, and trained police officer at the time of the arrest. *Chinnery*, 885 S.W.2d at 51. In examining the existence of probable cause, courts consider the information possessed by the officer before the arrest and the reasonable inferences drawn therefrom. *Duffy v. Dir. of Revenue*, 966 S.W.2d 372, 380 (Mo.App. W.D.1998). The arresting officer need not possess all the information concerning the offense and the arrestee's participation in it to form a belief amounting to probable cause. *Chinnery*, 885 S.W.2d at 51. A law enforcement officer need not actually observe a person driving a motor vehicle for probable cause to exist to arrest the person for driving while intoxicated. *Id.* Circumstantial evidence may be relied upon for concluding that a person drove in an intoxicated state when the person was not actually observed driving. *Id.*

■ The evidence presented at the hearing in this case was insufficient to establish that Trooper McMullin had probable cause to arrest Mr. Bain for driving while intoxicated, a requirement for suspension of Mr. Bain's license. Because Trooper McMullin was the sole arresting officer involved, the information he possessed before the arrest must constitute the basis for requisite probable cause. Trooper McMullin testified that he was dispatched to the accident scene in Morgan County where he observed two vehicles that appeared to have been involved in a head-on collision. A Dodge van appeared to have crossed the centerline and struck a Chevy Venture. Mr. Manton directed

Trooper McMullin to a man he had found occupying the Dodge van. Trooper McMullin spoke to that man, Mr. Bain. Whether Mr. Bain stated to Trooper McMullin that "he was driving the vehicle" is unclear from the transcript. The record does not show that Mr. Bain said to Trooper McMullin that he was driving the Dodge van when the accident occurred. Mr. Bain's speech was slurred when he spoke to Trooper McMullin, and his eyes were bloodshot. Trooper McMullin smelled alcohol on Mr. Bain's breath, and Mr. Bain stated that he had drunk "a few beers." Trooper McMullin asked Mr. Bain to accompany him to the Laurie Police Department so that Trooper McMullin could administer field sobriety tests, and Mr. Bain voluntarily went. Mr. Bain was not yet under arrest. At the police station, Mr. Bain failed the one-leg stand test. Trooper McMullin believed Mr. Bain to be intoxicated and arrested him. The breath test was subsequently administered.

The evidence presented at trial supports a conclusion that Mr. Bain was intoxicated at the time of the arrest, but the evidence does not establish that Trooper McMullin knew of facts and of purported facts claimed by others sufficient to constitute probable cause that Mr. Bain was driving a motor vehicle while intoxicated. The record shows that the only information Trooper McMullin possessed was that a Dodge van had crossed the center line of Highway 5 and had struck a southbound vehicle and that sometime after the accident, Mr. Bain was the only person found in the Dodge van. This information was insufficient to establish that Trooper McMullin had probable cause to arrest Mr. Bain for driving while intoxicated. Although the record contains additional information regarding the accident, the record is devoid of whether Trooper McMullin was provided this additional information before he arrested Mr. Bain. For example, Mr. Man-

ton, who had come upon the scene sometime after the accident, testified at the hearing that he observed Mr. Bain lying on the floor of the locked van and that a man had come out of a nearby residence and told him he had heard the accident and had called for an ambulance. A reasonable inference from such evidence would have been that Mr. Bain was the only person in the van at the time of the accident and that he was found soon after the accident thereby providing more support that Trooper McMullin had probable cause to arrest. Because Trooper McMullin was not shown to have known what Mr. Manton observed at the scene or what the resident had heard and of his immediate response before the Trooper arrested Mr. Bain, however, neither Mr. Manton's knowledge of events at the scene of the accident nor the resident's knowledge and response can be attributed to Trooper McMullin. The trial court, therefore, did not err in finding that the Director failed to establish that Trooper McMullin had probable cause to arrest Mr. Bain for driving while intoxicated.

The judgment of the trial court reinstating the driving privileges of Mr. Bain is affirmed.

BRECKENRIDGE, J. and ELLIS, J., concur.

