**STATE of Missouri, Plaintiff–Respondent,**

v.

**Rose A. THURSTON, Defendant–Appellant.**

**Nos. 24480, 24504.**

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 20, 2002.

Richard A. Ong, Carthage, for Appellant.

Patricia Brock Loveland, Asst. Pros. Atty., Newton County, Neosho, for Respondent.

PHILLIP R. GARRISON, Judge.

Rose A. Thurston ("Defendant") was charged with the class B misdemeanor of driving while intoxicated, in violation of Section 577.010,[1] and with the class A misdemeanor of careless and imprudent driving, in violation of Section 304.012. Defendant was found guilty of both offenses, and was fined $500 on the driving while intoxicated charge, and $105.50 plus costs on the careless and imprudent driving charge. Defendant appeals both convictions. She argues, *inter alia*, that there was insufficient evidence to prove that she drove or operated the vehicle in which she was found, a prerequisite to a conviction for each offense with which she was charged. On the record before us, we are compelled to agree with Defendant. The judgments of the trial court are reversed.

In court-tried cases, "the trial court's findings have the force and effect of a jury verdict[.] ... Consequently, we review this case as though a jury had returned a verdict of guilty." *State v. Falcone*, 918 S.W.2d 288, 289–90 (Mo.App. S.D.1996) (internal citations omitted). In cases where a defendant challenges the sufficiency of the evidence supporting her conviction, appellate review is "limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc), *cert. denied*, 525 U.S. 1021, 119 S.Ct. 551, 142 L.Ed.2d 458 (1998) (quoting *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc),

*cert. denied*, 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993)). All evidence favorable to the verdict is accepted as true, as well as reasonable inferences therefrom, while contrary evidence and inferences are disregarded. *Grim* at 405. "We do not weigh the evidence, but determine only whether there was sufficient evidence from which the trial court could have reasonably found Appellant guilty beyond a reasonable doubt." *Falcone* at 290 (internal citations omitted). Viewed through the lens of this standard of review, the evidence reveals the following:

Sometime prior to 12:27 A.M. on April 10, 2001, a Ford Ranger pickup truck ("truck") left Missouri Highway 43 in Newton County, Missouri and, after travelling some 215 feet, struck a ditch. There was a sweeping curve and a relatively steep slope at that point on the highway. Skies were cloudy, but road conditions were dry. No skid marks were left by the truck before leaving the road.

Sometime thereafter, two off-duty, uniformed Southwest City, Missouri police officers arrived at the scene. The officers removed Defendant from the truck to render assistance, although the record does not indicate from which side of the truck she was extricated. The officers then placed Defendant in the passenger side of the truck, and called for assistance.

Trooper Clinton S. Mason ("Mason") of the Missouri State Highway Patrol arrived at the scene of the accident at 12:27 A.M. He discovered Defendant sitting in the passenger seat of the truck. The record does not reflect whether the key to the truck was in the ignition, whether the engine was running, whether the engine compartment, hood, or cab of the truck was

---

**1.** All references to statutes are to RSMo (2000) unless otherwise indicated.

warm, whether the truck was in gear, or whether the lights inside or outside the truck were operating. No injury to Defendant or any other person was observed, and no property damage was evident other than to the truck and the ditch. Mason testified that he checked the registration of the truck, but could not remember what that check revealed.

Mason attempted to interview Defendant, but her responses were "mostly mumbled" and "incoherent." Mason attained Defendant's permission to search the truck, after she said that no drugs were in the truck and that she had not been drinking. Defendant said she was "tired," but also admitted at various times to taking one or two Valiums, "some pills," or "some muscle relaxers." She denied having any "drugs." Following a cursory search of the truck, Mason attempted to administer a field sobriety test to Defendant, but she was unable to comply with Mason's directions, due to her inability to stand without assistance. Mason placed Defendant under arrest for driving while intoxicated, handcuffed her, and placed her in his patrol car. Defendant protested vehemently, but again consented to Mason's request to more thoroughly search the truck. The only item of interest found in this search was a half-empty bottle of pills in the pocket of a leather coat. Mason returned to his patrol car to ask Defendant about the pills, but found her asleep or unconscious. Mason was unable to rouse Defendant and, fearing that she had taken an overdose of drugs, he transported her to a local hospital. After arriving at the hospital, Mason acquired Defendant's consent to take a urine sample to test for intoxicants. The sample collected was later tested, and revealed the presence of high levels of the prescription drug diazepam and its metabolite, desmethyldiazepam. Valium is a form of diazepam, and is typically classified as a tranquilizer. No alcohol was detected in the analysis.

Defendant's conviction followed the denial of her pre-trial motion to suppress the evidence collected from the search of the truck, and the urine analysis. Defendant appeals those convictions. Among Defendant's several assignments of error is her contention that there was insufficient evidence to prove beyond a reasonable doubt that she had been operating or driving the truck in which she was found. We are compelled to agree.

■ Section 577.010(1) states that a "person commits the crime of 'driving while intoxicated' if [she] operates a motor vehicle while in an intoxicated or drugged condition." The statutory definition of the term "operate" is found in Section 577.001(1), which states that a person "operates" a motor vehicle by "physically driving or operating a motor vehicle."[2] In *State v. Wiles*, 26 S.W.3d 436 (Mo.App. S.D.2000), this court affirmed a conviction of driving while intoxicated where the defendant was found in the driver's seat of his vehicle, with his foot on the brake pedal, and with the headlights, taillights and brake lights on, and the engine running at a fast idle. *Id.* at 438. In so holding, this court discussed the statutory definition of "operate," noting that "[w]hile

---

**2.** Prior to a 1996 legislative amendment of this definition, "operate" was defined as "physically driving or operating *or being in actual physical control of* a motor vehicle" Section 577.001(1) RSMo (1994) (emphasis added). Cases decided prior to the deletion of the phrase "being in actual physical con-

trol" tended to focus upon this phrase as the "lowest common denominator" in determining whether the facts supported a finding that a defendant operated a vehicle. *Wilcox v. Director of Revenue*, 842 S.W.2d 240, 242 (Mo.App. W.D.1992).

Missouri courts have admittedly used the terms 'operating' and 'driving' interchangeably, which has led to some confusion, this alone does not establish that the two terms have become synonymous." *Id.* at 440. The court stated that "the terms 'operate' and 'drive' must have a distinct meaning." *Id.* at 441. In *Wiles,* as in the instant case, the defendant's actions "did not constitute 'physically driving,' *in that the vehicle was not in motion.*" *Id.* (emphasis added). Drawing upon authority from foreign jurisdictions for guidance in filling the admitted gap in Missouri courts' analysis of the term "operate," the court said that a person "operates a motor vehicle ... when ... in the vehicle and in a position to control its movements, [the person] manipulates, for any purpose, the machinery of the motor or any other machinery manipulable from the driver's position that affects or could affect the vehicle's movement, whether [the individual] moves the vehicle or not." *Id.* (quoting *State v. Ducatt,* 22 Conn.App. 88, 575 A.2d 708, 710 (1990)). *See Flournoy v. State,* 106 Ga. App. 756, 128 S.E.2d 528, 530 (Ga.App. 1962) ("the word 'operate' has a [broad] meaning so as to include not only the motion of the vehicle but also acts which engage the machinery of the vehicle that, alone or in sequence, will set in motion the motive power of the vehicle."); *Commonwealth v. Plowman,* 28 Mass.App.Ct. 230, 548 N.E.2d 1278, 1280 (1990) ("[a] person operates a motor vehicle ... when, in the vehicle, he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of that vehicle") (quoting *Commonwealth v. Uski,* 263 Mass. 22, 160 N.E. 305 (1928)). Thus, while a defendant may not be "physically driving" a vehicle, her actions may "fall under the broader term of 'operating' as

defined in the aforementioned authorities." *Wiles* at 441.

 In the end, all of the cases drawn upon in *Wiles,* together with *Wiles* itself, have at least one evidentiary element in common: more evidence to satisfy the requirements of Section 577.010(1) was adduced at trial than in the instant case. We have no evidence before us indicating that the truck's engine was running, that any of the truck's lights were on, that the key was in the ignition, that Defendant was ever found behind the wheel, that the engine or passenger compartment was warm, that Defendant admitted driving the truck, that the truck was registered to Defendant, that Defendant was seen attempting to drive the truck, or any other indication that Defendant was "physically driving or operating [the] motor vehicle" as required for conviction under Section 577.010(1).

Indeed, the record reveals the trial court's concern as to the paucity of evidence showing operation of the truck by Defendant. The State's response consisted solely of citing the trial court to *Baptist v. Lohman,* 971 S.W.2d 366 (Mo.App. E.D. 1998), and the trial court responded, apparently on the basis of this reference to *Baptist,* by overruling Defendant's motion for judgment of acquittal. The State would have us consider *Baptist* as controlling authority on appeal as well. However, the State apparently fails to recognize the importance of the fact that *Baptist* considered the revocation of the defendant's driver license for refusing to submit to a breathalyzer test, a proceeding that involves a "reasonable ground" standard of proof, as opposed to the "beyond a reasonable doubt" standard assumed in criminal cases. *Id.* at 368. The *Baptist* court itself noted that the "quantum of proof required to show reasonable grounds is substantially less than that required to establish guilt beyond a reasonable doubt ..." *Id.* More-

over, the facts in *Baptist* make that case distinguishable from the instant case. In *Baptist*, the defendant was found slumped behind the steering wheel in a convenience store parking lot, with the key in the ignition, the engine running, and the truck's manual transmission in neutral. *Id.* at 368. Here, as we have noted, no such evidence is present in the record. The State's reliance on *Baptist* is, therefore, misplaced.

The State submits the truism that "[c]ircumstantial evidence may be relied upon for concluding that a person drove in an intoxicated state when the person was not actually observed driving." *Bain v. Wilson,* 69 S.W.3d 117, 121 (Mo.App. W.D. 2002). The bare truth of this assertion notwithstanding, *Bain* is another license revocation case, governed by a considerably less strict standard of proof than this criminal case. Even when governed by that lesser standard, the western district of this court in *Bain* found that discovering the defendant in that case sitting in the driver's seat of a wrecked vehicle and reeking of alcohol, without more, was insufficient even to meet a "reasonable ground" standard. *Id.* The court affirmed the reinstatement of the defendant's driving privileges. *Id.* at 122.

In sum, there is no evidence in the record to sustain a conviction of driving while intoxicated. Broad as the plain and ordinary meaning of "operating" a motor vehicle may be, we cannot fortify on the State's behalf, *sua sponte,* a record that is bereft of any evidence that would bring Defendant's actions within the boundaries of the most expansive of statutory definitions. The judgment of the trial court as to the driving while intoxicated conviction is, therefore, reversed.

■ Defendant also was charged with careless and imprudent driving, in violation of Section 304.012. That statute provides that every "person operating a motor vehicle on the roads and highways of this state shall drive the vehicle in a careful and prudent manner and at a rate of speed so as not to endanger the property of another or the life and limb of any person and shall exercise the highest degree of care." Defendant argues that the trial court erred in denying her motion for judgment of acquittal of this charge in that insufficient evidence showed that she was driving the truck or, even if she were driving, that she endangered the life, limb or property of another person as required by Section 304.012.

We already have considered the evidence showing Defendant operated the truck found in the ditch and found it insufficient to support a conviction of driving while intoxicated. Given that Section 304.012 is premised upon the similar assumption that a defendant "operates" the vehicle in question, the same conclusion as to the insufficiency of the evidence supporting conviction of careless and imprudent driving may be easily reached. The State's failure to prove Defendant operated the truck in which she was found is as fatal a flaw to Defendant's careless and imprudent driving conviction as it is to her conviction for driving while intoxicated. We therefore need not reach Defendant's argument that, even if she were driving the truck, she did not endanger the life, limb or property of another and thus did not violate the letter of Section 304.012. The evidence was insufficient to support the charge of careless and imprudent driving, and the conviction for that offense is, therefore, reversed.

The judgments of the trial court are

reversed.[3]

MONTGOMERY, P.J., and BARNEY, J., concur.

---

3. Because the arguments considered here are dispositive of the case, we do not reach the additional claims of error made by Defendant.