STATE of Missouri, Plaintiff–
Respondent

v.

Andrew HELLWEG, Defendant–
Appellant.

No. 27555.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 5, 2006.

Nancy A. McKerrow, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

Andrew Hellweg (defendant) was convicted as a persistent offender, following a jury trial, of the class D felony of driving while intoxicated. He appeals contending there was not sufficient evidence for the jury to have found him guilty beyond a reasonable doubt. This court affirms.

In reviewing the sufficiency of the evidence to support a criminal conviction, we view the evidence, together with all reasonable inferences drawn therefrom, in the light most favorable to the State and disregard all evidence and inferences to the contrary. *State v. Grim*, 854 S.W.2d 403, 405 (Mo.banc 1993). "[R]eview is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Dulany*, 781 S.W.2d 52, 55 (Mo.banc 1989).

*State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original).

On the afternoon of June 22, 2003, Troy and Shirleen Groesbeck were passengers

in a friend's car that was traveling on H Highway in Lawrence County near the University of Missouri Extension Center. They came upon a cloud of dust that crossed the highway in an area where gravel had been thrown on the surface of the paved roadway. As they passed through the dust, they observed a pickup in a ditch alongside the road. The pickup had not been there earlier that day when they had passed the same location.

Mr. and Mrs. Groesbeck saw the driver in the pickup who they later identified as defendant. As they watched the pickup, it accelerated and drove up the embankment that ran alongside the ditch. The pickup drove erratically. It headed east, alongside the ditch. It crossed the ditch and stalled on the shoulder of the highway. Defendant was the only one in the pickup. Defendant got out of the pickup and began walking west along the shoulder. Mrs. Groesbeck described defendant's walk as "a very unsteady, uncontrolled gait."

Mrs. Groesbeck is a retired registered nurse. She worked as a nurse for 45 years and has experience and training in recognizing persons who are intoxicated. Based on her observations of defendant, she formed the opinion that defendant had been drinking. She explained that there was no sign of blood or other indication of defendant having been injured; that "his staggering gait made [her] feel that, perhaps, he had either been drinking or something—had taken something that altered his control."

Mr. and Mrs. Groesbeck arrived at their residence about ten minutes later. Mr. Groesbeck immediately called the local police and reported what they had seen. A short time later they were called by the highway patrol and asked where they had observed the pickup.

Missouri Highway Patrol Trooper Jonathan May received a call from dispatch at about 4:30 or 4:45 p.m. He was notified that a one-car accident had been reported on Route H near the University of Missouri Extension Center; that there was a possibility the driver had been intoxicated. Trooper May left the facility where he received the call and went to the scene of the accident approximately three-and-a-half miles away. He arrived there about "four to five minutes" after receiving the call from the dispatcher.

Trooper May saw a pickup parked alongside the road and saw defendant attempting to change a tire on it. No one else was there. He asked defendant what had happened. Defendant said he had a flat tire the night before and had left the pickup there; that a friend had brought him back to change the tire. Defendant refused to identify the friend. Trooper May asked if defendant knew where he was. Defendant said he was four or five miles from Highway 60, although he was actually 15 or 20 miles from Highway 60.

Trooper May asked to see defendant's driver's license which defendant produced. He asked defendant to stand up. When defendant stood he swayed and almost fell over backward into the ditch although the ground where he stood was flat. Trooper May smelled a strong odor of intoxicants about defendant's person. He described defendant's speech as slurred and mumbling.

Defendant was asked if he needed a tow truck. Defendant became upset and, using obscene language, announced that he was not driving the truck and that it was not against the law to have a flat tire. Defendant was told to have a seat in Trooper May's patrol car. He swayed back and forth as he walked to the patrol car. Defendant fell forward, almost falling into the car. While sitting in the car,

Trooper May observed that defendant's eyes were bloodshot, glassy, and staring.

Defendant refused to take a sobriety test and claimed he had not been driving the pickup. He continued using obscene language. Trooper May took defendant to the sheriff's department. He was again asked to take a sobriety test and, continuing to use obscene language, refused.

Troy and Shirleen Groesbeck and Trooper May testified at defendant's trial. Defendant offered no evidence. Defendant filed motions for acquittal at the close of the state's evidence and at the close of all evidence. His motions were denied. The jury found defendant guilty of driving while intoxicated. He was found to be, and sentenced as, a persistent offender for the class D felony of driving while intoxicated.

Defendant asserts one point on appeal. He claims the trial court erred in denying his motions for acquittal and sentencing him for the class D felony of driving while intoxicated "in that there was no evidence from which a rational trier of fact could have reached a 'subjective state of near certitude' that [defendant] was operating a motor vehicle while intoxicated."

■■■ "The State, in order to convict, is required to prove beyond a reasonable doubt, each and every element of the crime charged." *State v. Smith*, 108 S.W.3d 714, 718 (Mo.App.2003). The elements of driving while intoxicated are that a person (1) operated a motor vehicle (2) while in an intoxicated or drugged condition. *See* § 577.010.1, RSMo 2000.

The jury in this case was instructed, in accordance with MAI–CR 3d 331.02, that if it believed from the evidence beyond a reasonable doubt "[f]irst, that on or about the 22nd day of June, 2003, south of Mt. Vernon on Highway H near Farm Road 1100 in the County of Lawrence, State of Missouri, the defendant operated a motor vehicle, and [s]econd, that he did so while in an intoxicated condition," they were to find defendant guilty of the offense of driving while intoxicated. The jury returned a guilty verdict.

Troy and Shirleen Groesbeck saw defendant driving his pickup. They saw him get out of the vehicle and, according to Mrs. Groesbeck, he walked in a manner that, in her experience, was consistent with a person being intoxicated. Within 15 to 30 minutes after Mr. and Mrs. Groesbeck observed defendant driving his pickup, Trooper May arrived to find defendant attempting to change a tire on the pickup.[1] Based on Trooper May's observations of defendant, he believed defendant was intoxicated. Although requested to take sobriety tests, defendant declined.

Defendant relies on *State v. Thurston*, 84 S.W.3d 536 (Mo.App.2002), as support for his argument that there was not sufficient evidence for him to have been found guilty of driving a motor vehicle while intoxicated. He argues that he was found attempting to change a flat tire; that "[t]here was no evidence that [he] was in a position to control the pickup's movements or was manipulating the machinery of the motor or any other machinery manipulable from the driver's position that affects or could affect the vehicle's movement."

The evidence in *Thurston* was that the defendant in that case, Rose Thurston, was found inside a pickup that had left the

---

1. Mr. and Mrs. Groesbeck observed defendant about 4:20 p.m. It took them about ten minutes to get to their home where they called the local police and reported what they had seen. Trooper May received a call from dispatch advising him of the report about 4:30 or 4:45 p.m. He left immediately to go to the scene. It took him about "four to five minutes" to get there.

highway, traveled some 215 feet, and struck a ditch. She was found by two off-duty police officers. They removed Ms. Thurston from the vehicle to render assistance, and then returned her to the passenger side of the vehicle while they called for assistance. When a highway patrol officer arrived, she was sitting in the passenger seat of the pickup. There was no evidence as to where Ms. Thurston was sitting in the vehicle when the police officers first arrived at the scene. "The record [did] not reflect whether the key to the truck was in the ignition, whether the engine was running, whether the engine compartment, hood, or cab of the truck was warm, whether the truck was in gear, or whether the lights inside or outside the truck were operating." *Id.* at 538–39. Although the patrol officer testified that he checked the pickup's registration, he did not remember what the check revealed.

Ms. Thurston was transported to a hospital. A urinalysis revealed the presence of high levels of a prescription drug that is classified as a tranquilizer. The urinalysis did not reveal the presence of alcohol.

*Thurston,* quoting from *State v. Wiles,* 26 S.W.3d 436 (Mo.App.2000), concluded that "a person 'operates a motor vehicle … when … in the vehicle and in a position to control its movements, [the person] manipulates, for any purpose, the machinery of the motor or any other machinery manipulable from the driver's position that affects or could affect the vehicle's movement, whether [the individual] moves the vehicle or not.'" 84 S.W.3d at 540. *Thurston* held that there was no evidence in that case "that the truck's engine was running, that any of the truck's lights were on, that the key was in the ignition, that [Ms. Thurston] was ever found behind the wheel, that the engine or passenger compartment was warm, that [Ms. Thurston] admitted driving the truck, that the truck

was registered to [Ms. Thurston], that [Ms. Thurston] was seen attempting to drive the truck, or any other indication that [Ms. Thurston] was 'physically driving or operating [the] motor vehicle' as required for conviction under Section 577.010(1)." *Id.* The court held that there was insufficient evidence from which a court could find Ms. Thurston operated the truck in question.

Unlike Ms. Thurston, defendant in this case was observed operating the pickup truck. *Thurston* is inapposite to the facts in this case. Defendant's reliance on it is misplaced.

Defendant addresses the issue of intoxication by contending that because Trooper May did not see defendant operate his pickup, Trooper May's opinion and the facts on which it was based are not evidence for consideration with respect to whether defendant was intoxicated at the time he was driving the pickup. Defendant argues that this position is supported by *State v. Dodson,* 496 S.W.2d 272 (Mo. App.1973), that held a highway patrol officer's determination that Mr. Dodson was intoxicated some 40 minutes after a one-car accident did not satisfy the element of intoxication for purposes of the charge of driving while intoxicated.

In *Dodson,* Dennis Dodson had consumed two bottles of beer at a tavern between 3:00 and 5:00 p.m. About 9:00 p.m. that evening, as he was driving home, Mr. Dodson ran off the roadway into a ditch. Mr. and Mrs. Steve Cotton came upon the accident, stopped, and assisted Mr. Dodson in exiting his vehicle. They transported Mr. Dodson to his residence.

About 9:40 p.m. a highway patrolman went to the Dodson residence to investigate the accident. As he looked through a window, the officer saw Mr. Dodson lying on a bed, fully clothed, in a lighted bedroom. Mr. Dodson came to the door. The

officer testified that Mr. Dodson's eyes were bloodshot, that he was unsteady on his feet and "his speech was very thick to the point of being incoherent and he smelled heavily of alcohol." *Id.* at 273.

Dennis Dodson testified. He said that when he arrived home after the accident, his neck hurt and he took three big drinks of whiskey before he lay down. He denied that he had been intoxicated at any time up to and including the time of the accident. Steve Cotton testified on behalf of Mr. Dodson. Mr. Cotton testified that he detected no odor of alcohol when he helped Mr. Dodson out of his vehicle at the scene of the accident. *Dodson* held that there was insufficient evidence to convict Dennis Dodson of driving while intoxicated; that "it was incumbent upon the State to prove that [Dodson] was intoxicated at and before 8:55 p.m., while he was driving his vehicle"; that "[t]he fact that [Dodson] was intoxicated at 9:40 p.m. [was] not substantial proof as to his condition approximately one hour previously." *Id.*

This case differs from *Dodson* in that a person who observed defendant walking along the road immediately after the accident testified that his manner of walking was consistent with being intoxicated and there was no evidence that defendant consumed intoxicants between the time of the accident and his conversation with and arrest by Trooper May. There was sufficient evidence from which the trier of fact could infer that defendant's condition, with respect to being intoxicated, was not enhanced between the time of the accident and his confrontation with Trooper May.

There was sufficient evidence from which a reasonable juror could have found, beyond a reasonable doubt, that defendant drove his pickup while intoxicated. Defendant's point on appeal is denied. The judgment is affirmed.

RAHMEYER, P.J., and SCOTT, J., concur.