**STATE of Missouri, Plaintiff–Respondent,**

v.

**Shannon Lloyd MITCHELL, Defendant–Appellant.**

No. 27186.

Missouri Court of Appeals,
Southern District,
Division II.

Oct. 13, 2006.

Bruce Galloway, Ozark, MO, for Appellant.

Janette Bleau, Asst. Prosecuting Atty., Ozark, MO, for Respondent.

JEFFREY W. BATES, Chief Judge.

Shannon L. Mitchell (Defendant) was charged with committing the class A misdemeanor of driving while intoxicated in violation of § 577.010.[1] The trial court found Defendant guilty and sentenced him to pay a $500 fine and serve one year in the Christian County jail. The court suspended execution of the jail sentence and placed Defendant on probation for two years. On appeal, Defendant claims the trial court erred in denying Defendant's motion for judgment of acquittal filed at the close of all of the evidence. Defendant contends the court should have sustained the motion because there was insufficient evidence to prove beyond a reasonable doubt that Defendant was operating his vehicle while intoxicated. We affirm.

## I. Factual and Procedural Background

The State's case was presented through the testimony of Officer Jeremy Grisham (Officer Grisham). He was employed by the Nixa, Missouri, police department and worked the 10:00 p.m. to 8:00 a.m. shift.

At approximately 2:00 a.m. on January 1, 2005, Officer Grisham was driving his patrol car north on Gregg Road. He observed a silver Chevrolet Tahoe (Tahoe) stopped on the exit driveway of Mathews Elementary School. The rear of the Tahoe was facing Gregg Road, and the vehicle's reverse lights and brake lights were illuminated. Officer Grisham decided to check out the Tahoe because the vehicle's presence at a closed school at 2:00 a.m. was suspicious.

Officer Grisham stopped directly behind the Tahoe and activated the patrol car's overhead lights. He exited his car and approached the passenger side of the Tahoe. Its engine was running and, as Officer Grisham approached, the passenger-side power window rolled down. Defendant's spouse (Wife) was sitting in the passenger's seat; Defendant was sitting in the driver's seat. When Officer Grisham asked Defendant what he and his wife

---

1. All references to statutes are to RSMo (2000), unless otherwise indicated.

were doing at a school at 2:00 a.m., he was told that they had pulled in there because they were in the process of moving and were looking for a place to stay for the night.

Officer Grisham could smell the strong odor of an alcoholic beverage coming from inside the vehicle. He observed that Wife's eyes were extremely red and blood-shot, so he asked if she had been drinking. Wife said she had. Officer Grisham then asked Defendant if he had been drinking and he replied, "I had a couple earlier." When Officer Grisham sought more detailed information about Defendant's alcohol consumption, Wife stated that "[h]e had a few earlier, but that was before the New Year."

As Officer Grisham walked around to the driver's side of the Tahoe, Defendant rolled down the power window. Defendant's eyes were watery and bloodshot, and his breath smelled of alcohol. Officer Grisham performed a horizontal gaze nystagmus on Defendant while he was seated in the Tahoe. The results of that test indicated Defendant had alcohol in his system, so Officer Grisham decided to administer field sobriety tests. Defendant exhibited a poor ability to follow instructions and failed all three tests. When Officer Grisham asked Defendant to undergo a preliminary breath test as an additional field sobriety test, Defendant refused.

Officer Grisham arrested Defendant for driving a vehicle while intoxicated. During a search of the Tahoe incident to Defendant's arrest, Officer Grisham found a gallon container of an alcoholic margarita drink. The container was open and half empty. Once Defendant arrived at the police station, he refused to submit to a breathalyzer test.

At the close of the State's evidence, Defendant filed a motion for judgment of acquittal. The trial court denied the motion.

The defense case was presented via the testimony of four witnesses. For purposes of this appeal, the relevant testimony was provided by auto mechanic Jackie Schuller (Schuller) and Defendant.[2]

Schuller testified that he installed a toggle switch in the Tahoe's center console in July 2004. The purpose of the switch was to activate the Tahoe's reverse lights when the engine was off and the transmission was in park. Defendant sometimes loaded automobiles at night on a tow dolly attached to the Tahoe. He had the console switch installed to provide white-light illumination during that process without the need for the engine to be running or the transmission to be placed in reverse. On cross-examination, however, Schuller conceded that the Tahoe's reverse lights would continue to operate normally when the engine was running and the transmission was placed in reverse.

Defendant testified that Wife had been driving the Tahoe and that he was sitting in the front passenger seat. The couple was moving and planned to move into one of two possible rental houses in Nixa the next morning. They decided to go look at one of the houses one more time. Wife became lost and pulled into the school's driveway to find a map inside the car. She shut off the engine, removed the keys from the ignition and exited the driver's seat. Wife went to the rear of the Tahoe, opened the hatch, removed some boxes and bags and dumped out their contents. Wife then asked Defendant to "turn on the

2. The gist of the testimony provided by the other two witnesses was that Defendant had a reputation for truthfulness in the community.

light." After turning on the Tahoe's interior lights and headlights, he activated its reverse lights using the toggle switch in the console. Wife still could not find a map. She came to the passenger door and told Defendant to get out of the way so she could look in the glove compartment. Defendant walked around the back of the Tahoe past the open hatch and got into the driver's seat. He shut the door because the weather was cold. He found a compact disc and began playing music on the stereo. A police car pulled up behind the Tahoe one or two minutes after Defendant sat in the driver's seat. After turning all of the lights off, Defendant looked down and saw that the keys were in the cupholder.

At the close of all the evidence, Defendant filed another motion for judgment of acquittal. The trial court also denied this motion. After Defendant was convicted of driving while intoxicated, he appealed.

## II. Standard of Review

In a court-tried criminal case, the court's findings have the force and effect of a jury verdict. Rule 27.01(b); *State v. Fraga*, 189 S.W.3d 585, 586 (Mo. App.2006). "Therefore, the standard used to review the sufficiency of the evidence in a court-tried and a jury-tried criminal case is the same." *Fraga*, 189 S.W.3d at 586. Our role in reviewing the sufficiency of the evidence to support a criminal conviction is limited to determining whether there was sufficient evidence from which a reasonable fact finder could have found that the defendant was guilty beyond a reasonable doubt. *State v. Mitchell*, 77 S.W.3d 637, 640 (Mo.App.2002). We accept as true the evidence and reasonable inferences derived therefrom that are favorable to the judgment. *State v. McQuary*, 173 S.W.3d 663, 667 (Mo.App.2005). We disregard all unfavorable evidence and inferences. *Id.*

This standard applies even when all evidence of a defendant's guilt is circumstantial. *State v. Thompson*, 147 S.W.3d 150, 162 (Mo.App.2004). "Great deference is given to the trier of fact, and an appellate court is not to act as a 'super juror' with veto power over a verdict." *State v. Daniels*, 179 S.W.3d 273, 285 (Mo.App.2005). Therefore, we do not weigh the evidence or determine the reliability or credibility of witnesses. *Id.*

Defendant initially filed a motion for judgment of acquittal at the close of the State's case. When this motion was denied, Defendant presented evidence on his own behalf. Thereafter, the trial court denied Defendant's subsequent motion for judgment of acquittal filed at the close of all the evidence. We take note of this procedural posture because it affects the scope of our review. "When a defendant introduces evidence on his own behalf, after the overruling of his motion for judgment of acquittal at the close of the State's case, the sufficiency of the evidence must be determined upon the entire record considering any incriminating evidence developed during the defendant's case." *State v. Rivers*, 554 S.W.2d 548, 550 (Mo.App. 1977).

## III. Discussion and Decision

In Defendant's sole point on appeal, he contends the trial court erred in denying the motion for judgment of acquittal at the close of all the evidence. Defendant was convicted of driving while intoxicated in violation of § 577.010. This crime is committed when a person "operates a motor vehicle while in an intoxicated or drugged condition." § 577.010.1. Thus, the two essential elements of this crime are: (1) operation of a vehicle; (2) while intoxicated. *See State v. Madorie*, 156 S.W.3d 351, 355–56 (Mo. banc 2005); *State v. Scholl*, 114 S.W.3d 304, 307 (Mo.App.2003).

Defendant concedes he was intoxicated when he was arrested. Therefore, the only issue we must decide is whether there was sufficient evidence for a reasonable fact finder to conclude beyond a reasonable doubt that Defendant operated the Tahoe while in that condition.[3]

This inquiry involves the proper construction to be given § 577.010: *viz.*, what activities constitute operation of a motor vehicle within the meaning of this statute. Section 577.010 contains no internal definition of the word "operates." Instead, a chapter-wide definition for this word is found in § 577.001. Prior to 1996, the word "operates" was defined to mean "physically driving or operating or being in actual physical control of a motor vehicle." § 577.001.1 RSMo (1994). Under that definition of "operates," a person could be convicted of driving while intoxicated by simply sleeping behind the wheel of his running automobile with the transmission in park. *See State v. O'Toole*, 673 S.W.2d 25, 26 (Mo. banc 1984). In *O'Toole*, our Supreme Court reasoned that the defendant's actions constituted operation because he was in actual physical control of the automobile:

> [A]ctual physical control occurs when, "even though the machine merely stands motionless, . . . a person keeps the vehicle in restraint or in a position to regulate its movements." *City of Kansas City v. Troutner*, 544 S.W.2d 295, 300 (Mo.App.1976). The evidence established that defendant was seated behind the wheel of his vehicle and that the car was engaged in "park." He was in a position to regulate the vehicle's movements, and was therefore "operating" the motor vehicle within the meaning of chapter 577, RSMo 1982. *See City of Kansas City v. Troutner, supra.*

*Id.* at 27.[4] In 1996, however, the General Assembly amended § 577.001.1 to remove the phrase "or being in actual physical control of" from the definition of "operates." 1996 Mo. Laws 575, 593; 599, 617. Since that time, the word "operates" in § 577.010 has been defined to mean "physically driving or operating a motor vehicle." § 577.001.1.[5]

In *State v. Wiles*, 26 S.W.3d 436 (Mo. App.2000), this Court addressed the effect of this amendment on a defendant's criminal prosecution for driving while intoxicated. Wiles was found asleep in an intoxicated condition in the driver's seat of his truck. The vehicle's headlights, taillights and brake lights were illuminated. The engine was running at a fast idle, and its transmission was in park. Wiles was slumped over the steering wheel with his

---

3. Evidence of guilt beyond a reasonable doubt can be established by circumstantial evidence alone. *State v. Daniels*, 179 S.W.3d 273, 285 (Mo.App.2005). "[C]ircumstantial evidence is given the same weight as direct evidence and the [fact finder] is free to make reasonable inferences from the evidence presented." *State v. Brooks*, 158 S.W.3d 841, 848 (Mo. App.2005). Therefore, the State could establish the operation element of the offense via circumstantial evidence. *See State v. Eppenauer*, 957 S.W.2d 501, 503 (Mo.App.1997).

4. In *Troutner*, the defendant was found asleep behind the wheel of his truck on a private parking lot. The truck's engine was running, its transmission was in park and the defen-

dant's right hand was draped over the steering wheel. He was found guilty of violating a municipal ordinance which proscribed operating or being in actual physical control of a vehicle while under the influence of an intoxicating liquor. *Troutner*, 544 S.W.2d at 296–97. On appeal, the western district of this Court adopted a definition for "actual physical control" which was later accepted and applied by our Supreme Court in *O'Toole*. *Troutner*, 544 S.W.2d at 300; *O'Toole*, 673 S.W.2d at 27.

5. Following an amendment in 2005, this definition is now found in § 577.001.2 RSMo Cum.Supp. (2005).

left foot on the brake and his right foot on the accelerator. *Id.* at 438. After being convicted of driving while intoxicated, Wiles appealed. He contended the trial court should have sustained his motion for judgment of acquittal because there was insufficient evidence to prove beyond a reasonable doubt that he had been operating his vehicle while intoxicated. Wiles argued he had merely been in actual physical control of the vehicle, which was no longer a crime, because sleeping in a vehicle with its transmission in park without moving or driving did not constitute operation. *Id.* at 439. We rejected this argument and held that there was sufficient evidence from which a reasonable juror could have found Wiles was operating his vehicle in violation of § 577.010 because "[Wiles] was engaging the machinery of his vehicle and was in a position to manipulate its movement." *Id.* at 441.

The western district of this Court addressed the same issue in *State v. Mitchell,* 77 S.W.3d 637 (Mo.App.2002). There, an officer saw a truck stopped partially on the shoulder and partially on the grass next to a highway. The truck's brake lights were illuminated, so the officer parked behind the truck to see if the driver needed assistance. He found Mitchell, intoxicated and asleep, in the driver's seat of the truck. The engine was running, the transmission was in the drive position, and Mitchell's foot was on the brake. *Id.* at 638–39. After Mitchell was convicted of driving while intoxicated, he appealed. Relying on the amendment to § 577.001 deleting "actual physical control" from the definition of "operates," he argued there was insufficient evidence to prove he operated his vehicle while intoxicated. Citing *Wiles,* the western district disagreed:

> Because Mr. Mitchell's transmission was in "drive" and not "park," as was the driver's transmission in *Wiles,* the circumstances here are even more compel-

ling than those deemed sufficient to constitute operating in *Wiles.* Clearly, as in *Wiles,* Mr. Mitchell was engaging the machinery of his vehicle and was in a position to manipulate its movement, since the engine was running, the vehicle was in gear to drive, and Mr. Mitchell's pressing the brake pedal was the only reason his truck was not moving. Therefore, this court finds that there was sufficient evidence from which a reasonable juror could conclude that Mr. Mitchell was guilty beyond a reasonable doubt of operating his vehicle while in an intoxicated condition.

*Id.* at 641.

The effect of the amendment to § 577.001 was discussed by our Supreme Court in *Cox v. Director of Revenue,* 98 S.W.3d 548 (Mo. banc 2003). Cox was found sleeping or unconscious in the driver's seat of a vehicle in a gas station parking lot. Cox was alone in the vehicle. The keys were in the ignition, the motor was running and the transmission was in park. A subsequent breath test showed that Cox had a .18% blood alcohol content. *Id.* at 549. The Director suspended Cox's driving privileges, but the circuit court overturned that decision on trial *de novo.* On appeal, the Supreme Court reversed and remanded with instructions to reinstate the suspension. The Court first noted that the amendment to § 577.001 narrowed its scope and was intended by the General Assembly to negate the holding in *O'Toole. Cox,* 98 S.W.3d at 550. Next, the court explained that the terms "driving" and "operating" used in § 577.001 have distinct meanings. Because these words are not statutorily defined, a court ascertains the legislature's intent by considering their plain and ordinary meanings as derived from a dictionary. *Id.* at 550. Using dictionary definitions, the Court defined "driving" as "guiding a vehicle along

or through." Because Cox's vehicle was motionless and not being guided along or through anything by him, the Supreme Court held that Cox was not driving his car. The Court reached the opposite conclusion, however, on the issue of operation:

> The dictionary defines *operate* as "to cause to function usually by direct personal effort: work (~ a car)." Cox meets the bright-line test to operate a car, as he caused its motor to function. Once the key is in the ignition, and the engine is running, an officer may have probable cause to believe that the person sitting behind the steering wheel is operating the vehicle. This is true even if that person is sleeping or unconscious.

*Id.* (citations omitted). In reaching that conclusion, the Supreme Court cited both *Mitchell* and *Wiles* with approval. *Id.*

Applying the teaching of *Cox, Mitchell* and *Wiles* to the case at bar, we hold that there was sufficient evidence for the court to find beyond a reasonable doubt that Defendant was operating the Tahoe while intoxicated. When Officer Grisham pulled up behind the Tahoe, he observed that its brake lights and reverse lights were illuminated. He also heard the vehicle's engine running and saw Defendant sitting in the driver's seat of the vehicle. As Officer Grisham approached him, Defendant rolled down the Tahoe's power window. From these facts, the court could have reasonably inferred that the keys were in the Tahoe's ignition, its motor was running, the transmission was in reverse and the only thing keeping the vehicle from rolling backwards under power was Defendant's foot on the brake pedal. Thus, Defendant was causing the Tahoe to function by direct personal effort, which constitutes operation as defined in *Cox.* In so holding, we have considered Defendant's various arguments, but we find them unpersuasive.

First, Defendant points out various inconsistencies between Officer Grisham's trial testimony and his police report. This argument goes to the credibility and weight of Officer Grisham's testimony, which was a matter for the trial court to resolve. On appeal, we do not determine a witness' reliability or credibility. *State v. Wirth,* 192 S.W.3d 480, 481–82 (Mo.App. 2006).

Second, Defendant argues that *Cox* was decided under a probable cause standard, and more evidence is required to satisfy the criminal standard of proof beyond a reasonable doubt. While true, this argument is unavailing because *Wiles* and *Mitchell* were both criminal cases in which the evidence was held sufficient to sustain the defendant's conviction. The facts in *Mitchell* are substantially the same as in the case at bar, and the facts in *Wiles* were more favorable to the defendant than here because Wiles' transmission was still in park. Defendant has not cited any factually similar criminal case in which the evidence was held insufficient to support the conviction.[6]

Third, Defendant argues that the amendment to § 577.001 was intended to

---

**6.** In *State v. Thurston,* 84 S.W.3d 536 (Mo. App.2002), Thurston was found in the passenger's seat of a pickup truck that had run off the road. The record contained no evidence that: (1) the truck's motor was running; (2) any of its lights were on; (3) the keys were in the ignition; (4) the passenger compartment or engine was warm; (5) Thurston admitted driving the truck; (6) it was registered to her; (7) she was seen attempting to drive the truck; or (8) any other indication that she was operating the truck as required for a conviction pursuant to § 577.010. After she was convicted of driving while intoxicated, we held that the evidence was insufficient to support her conviction. *Id.* at 540. In contrast, the direct and circumstantial evidence in the case at bar is sufficient to establish most of the factors found missing in *Thurston.*

preclude a criminal conviction for driving while intoxicated when the vehicle is motionless and the driver is merely in a position to regulate its movements. We disagree. That principle, which is drawn from *O'Toole,* was made with reference to a person sleeping in the driver's seat of his car while the transmission was in park. *O'Toole,* 673 S.W.2d at 26–27. The Supreme Court held that the defendant was guilty of driving while intoxicated by virtue of being in actual physical control of the vehicle. *Id.* at 27. Those are not the facts before us. The trial court could reasonably have inferred that Defendant was holding the Tahoe in place with the brake, while its motor was running and its transmission was in reverse, preparatory to backing out onto the highway. Thus, Defendant was operating his vehicle, as defined by *Cox,* and was on the cusp of driving. Furthermore, operation of a vehicle took place in *Cox, Wiles* and *Mitchell* despite the fact that the vehicles were motionless when discovered by law enforcement officers.

Finally, Defendant argues that the illumination of his reverse lights did not demonstrate operation because he presented an alternative explanation for how such lights could be on without the Tahoe being in gear. This argument appears to be based on the outmoded "equally valid inferences rule." *State v. Jensen,* 184 S.W.3d 586, 588 n. 2 (Mo.App.2006). Under this rule, guilt beyond a reasonable doubt could not be established when two equally valid inferences (i.e., an inference tending to prove guilt and an inference tending to prove innocence) could be drawn from the same evidence. *See State v. Roberts,* 709 S.W.2d 857, 862 (Mo. banc 1986). This approach to reviewing the sufficiency of evidence to support a conviction on appeal, however, was explicitly overruled by the Supreme Court of Missouri in *State v. Chaney,* 967 S.W.2d 47, 54 (Mo. banc 1998). Because this rule no longer applies, the competing inferences that could be drawn from Officer Grisham's observations (the illuminated reverse and brake lights meant the Tahoe's transmission was in reverse and the vehicle was being held in place by the brakes) and from the testimony of Defendant and Schuller (the reverse lights were illuminated because Defendant flipped the console switch while the engine was off and the transmission was in park) presented an issue of fact for the judge to decide. The court was not obliged to believe Defendant's testimony.[7] On review, we must accept as true only the evidence and inferences supportive of the judgment of conviction. *State v. Fraga,* 189 S.W.3d 585, 586 (Mo.App.2006).

Because the record contains sufficient evidence to support Defendant's conviction for driving while intoxicated, we deny his point on appeal. Accordingly, the trial court's judgment is affirmed.

BARNEY, and LYNCH, JJ., Concurs.

---

7. The judge could have declined to believe Defendant's account of events because he did not explain: (1) how the Tahoe's rear tailgate got closed; (2) how Defendant was able to play the stereo after Wife had removed the keys from the ignition and opened her door to exit the vehicle; or (3) why his brake lights were illuminated when Officer Grisham arrived.