STATE of Missouri, Plaintiff–
Respondent,

v.

Zack Randall GRAVES, Defendant–
Appellant.

No. SD 31373.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 26, 2012.

Timothy R. Brown, Law Office of Rita Sanders d/b/a The Ticket Center Law Office, Springfield, MO, for Appellant.

J. Daniel Patterson, Greene County Prosecuting Attorney, and Kevin J. Lorenz, Assistant Prosecuting Attorney, Springfield, MO, for Respondent.

GARY W. LYNCH, Judge.

Zack Randall Graves ("Defendant") appeals his conviction for the class A misdemeanor of driving while intoxicated. *See* section 577.010.[1] Defendant contends the trial court erred in convicting him of that charge because there was insufficient evidence that he was operating the motor vehicle in question and insufficient evidence that he had a prior conviction, plea of guilty, or finding of guilt in an intoxication-related traffic offense. Finding no merit in these contentions, we affirm.

### *Factual and Procedural Background*

Defendant was charged by information with driving while intoxicated, in violation of section 577.010, on February 27, 2010.

The information alleged that this offense should be punished as a class A misdemeanor, in accordance with sections 558.011, 560.016, and 577.023, because of Defendant's prior conviction for driving while intoxicated in the Municipal Court of Springfield, Missouri, in 2009.

At trial, before opening statements, defense counsel stated, "We are stipulating that our client is seated here at defense table." This statement led to the following exchange between the trial judge, defense counsel, and prosecutor:

THE COURT: Anything else?

[Defense Counsel]: No, Your Honor.

[Prosecutor]: Are you stipulating the person pulled over is the person sitting at defense table? I'm sorry. I didn't understand.

THE COURT: Are you stipulating that the Defendant is the person sitting next to you?

[Defense Counsel]: I'm stipulating that the Defendant in this case is the person sitting next to us. Yes, Your Honor.

Following the above exchange and during Defendant's opening statement, defense counsel stated, "The evidence will show that *my client* passed the field sobriety tests that were administered *to him.*" (Emphasis added).

In presenting its case, the State initially offered into evidence State's exhibit one, a document that the transcript refers to as a "certified copy of a prior offense." Defendant initially objected to the exhibit in the following exchange:

[Defense Counsel]: I do object … if there's not foundation laid for it.

THE COURT: Well, if it's a certified copy, then isn't that foundation?

[Defense Counsel]: I mean, the foundation of it being the same person that was

---

1. All statutory references are to RSMo Cum Supp.2009, unless otherwise indicated.

convicted is being convicted, in that case being the same person that's on trial here.

THE COURT: May I see it? All right. It has a date of birth in here. So is there some substantive objection you have or some substantive reason, given your stipulation at the beginning of trial?

[Defense Counsel]: No, Your Honor.

The trial court overruled Defendant's objection, and Defendant does not challenge that ruling in this appeal.

The State then called its only witness, City of Springfield police officer Clint Collier. During his direct testimony, he was asked, "And, did you come into contact with *Zack Graves* on that day?" (Emphasis added). Officer Collier answered in the affirmative. The State also asked Officer Collier, "How did you identify someone as *Zack Graves* that night?" (Emphasis added). Officer Collier testified that Defendant handed him his Missouri ID, and he went back to his car and "ran [it]" The State also asked Officer Collier, "How did that contact with *Mr. Graves* come about," to which Officer Collier replied, "I witnessed *his* vehicle traveling southbound on Glenstone with no headlights." (Emphasis added). Also, during direct examination, Officer Collier testified to the course of events transpiring during the traffic stop, including: the field sobriety tests he asked "the defendant" to perform; "Mr. Graves'" performance on those tests and signs of impairment; "Mr. Graves'" subsequent arrest, transportation to the Greene County Jail; reading of *Miranda* rights from the Alcohol Influence Report; informing "Mr. Graves" of the Missouri Implied Consent Law; "Mr. Graves'" agreement to take a breath test; the administration of the breath test on a BAC DataMaster to "Mr. Graves," which included giving instructions to "Mr. Graves" and

observing "Mr. Graves"; the printed results of that test; and State's exhibit three described in the transcript as a "BAC Evidence Ticket" that showed "Defendant's name" and date of birth.

On cross examination, defense counsel questioned Officer Collier about the events of the evening in question, but most notably for this appeal, the following:

Q: Officer, do you know if the vehicle the *Defendant* was driving had automatic headlights on it? (Emphasis added).

A: I have no idea, sir.

* * * *

Q: And you noted in your report the *Defendant's* breath had the faint odor of alcohol, didn't you? (Emphasis added).

A. I believe so. Yes, sir.

* * * *

Q. Was the *Defendant* doing anything else that might have made you think the—the breath would be faint instead of moderate or strong? (Emphasis added).

A. Sir, I don't know—I don't know why. It smelled faint to me. That's why I marked it down.

* * * *

Q: ... you noted that the speech of *Defendant* was mumbling, correct? (Emphasis added).

A. Correct.

* * * *

Q: And on the walk-and-turn, did *the Defendant* stop while walking to steady himself? (Emphasis added).

A: I don't recall. I'd have to look in my report, sir.

* * * *

Q: Okay. And you had *the Defendant* perform the one leg stand, right? (Emphasis added).

A: Yes, sir.

* * * *

Q. And then during the 15–minute observation period, you did nothing during that 15–minute observation period other than observe *the Defendant,* did you? (Emphasis added).

A. I read off the questionnaire on the AIR to him during the 15 minutes.

In closing arguments, defense counsel stated, "He [referring to Officer Collier] didn't check *my client's* mouth.... If *my client* had something in his mouth ... it could have vastly affected his result." (Emphasis added).

The trial court found Defendant guilty beyond a reasonable doubt and sentenced Defendant to pay a $350 fine and serve 180 days in the Greene County Jail. The execution of the jail sentence was suspended, and Defendant was placed on unsupervised probation for two years on the conditions that he complete SATOP, perform 60 hours of community service, serve five days of detention in the Greene County Jail, pay $155.00 to Law Enforcement Recoupment, pay court costs, and pay $10.00 to the Crime Victims Compensation Fund. Defendant timely appealed.

### *Standard of Review*

As in a jury-tried criminal case, our role in reviewing the sufficiency of the evidence to support a criminal conviction in a court-tried case is limited to determining whether there was sufficient evidence from which a reasonable fact finder could have found that the defendant was guilty beyond a reasonable doubt. *State v. Mitchell,* 203 S.W.3d 246, 249 (Mo.App. 2006). We consider only the evidence and reasonable inferences derived therefrom favorable to the judgment and disregard all unfavorable evidence and inferences. *Id.* "[W]e do not weigh the evidence or determine the reliability or credibility of witnesses." *Id.*

### *Discussion*

### *Point I—Identification at Trial*

In his first point, Defendant claims that the State "failed to adduce at trial *any* evidence that [Defendant] was the individual operating the motor vehicle in question." (Emphasis added).

As a preliminary issue, Defendant and the State disagree about the nature and extent of the stipulation by defense counsel at trial regarding Defendant's identity. The record reflects possible ambiguity or misunderstanding between the parties and the trial court as to the intended meaning of his stipulations. Stripped of any party's assumptions or intended meanings, however, defense counsel expressly stipulated that his client was seated at the defense table at trial and "that the Defendant in this case [was] the person sitting next" to defense counsel at that table. According to the information filed by the State, the named defendant in this case is Zack Randall Graves. Therefore, defense counsel's stipulations, taken at face value alone, support that defense counsel's client, the person at trial sitting next to defense counsel at the defense table, the named defendant in this case, and Zach Randall Graves are all one and the same person. Other than establishing this logical equality, this Court gives defense counsel's stipulations no further import in this opinion.

It is well settled that in order to properly convict a defendant, the State must prove, beyond a reasonable doubt, each element of the crime with which the defendant is charged. *In re Winship,* 397 U.S. 358, 362, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Convictions sustained wherein the State failed to meet this burden are a violation of the defendant's constitutionally guaranteed due process rights. *Id.* An essential element of any crime is that the person charged with an offense is the per-

son who committed the offense, and the State bears the burden of proving this fact to the trial court. *State v. Murphy*, 415 S.W.2d 758, 760 (Mo. banc 1967). Defendant correctly argues that *one* method the State may use to meet this burden is the positive in-court identification by an eyewitness. *See State v. Cannon*, 486 S.W.2d 212, 214 (Mo.1972). The State, however, is not limited to this one method in proving that the person charged with the offence is the person who committed the offense. *State v. Lingar*, 726 S.W.2d 728, 733 (Mo. banc 1987) ("The procedure used at trial to identify the defendant lies within the prudent discretion of the trial court.") (citing *State v. Hubbard*, 659 S.W.2d 551, 559 (Mo.App.1983)).

In *Lingar*, a jury found defendant guilty of first-degree murder and sentenced defendant to death without in-court identification. *Id.* at 732. The State offered as proof of identity the testimony of a witness who identified the defendant by name. *Id.* at 733. The State also offered the testimony of another witness, a co-participant in the crime, who repeatedly identified the defendant by name throughout his testimony. *Id.* Our Supreme Court found "the jury could clearly infer that the 'Stanley Lingar' referred to by the witnesses was the defendant present in court." *Id.*

■ Here, Officer Collier testified without objection that he came into contact with "Zack Graves" on February 27, 2010, after he observed "Mr. Graves'" vehicle traveling southbound on Glenstone with no headlights, which resulted in the traffic stop at issue. He identified the person he stopped as "Zack Graves" when "Defendant" handed him his Missouri ID. In describing the traffic stop and the events that occurred thereafter, Officer Collier repeatedly testified on his direct examination as to his interaction with "Zack Graves," "Mr. Graves," and "the Defendant." According to the trial court, State's exhibit one—described in the transcript as a "certified copy of a prior offense"—identified Defendant by name and date of birth.[2] Likewise, State's exhibit three—the BAC Evidence Ticket—identified Defendant by name and date of birth.

In addition, referring to the person involved in the traffic stop in question, during cross-examination, defense counsel asked Officer Collier the following: "Was *the Defendant* chewing gum?"; "Was *the Defendant* doing any else?"; "Do you know if *the Defendant in this case* has allergies?"; "[Y]ou had *the Defendant* perform the one leg stand, right?"; and "[Y]ou did nothing during the 15-minute observation period other than observe *the Defendant* [.]" (Emphasis added). All of these questions by defense counsel were consistent with Defendant's admitted trial position—voiced by defense counsel during opening statement that "my client passed the field sobriety tests that were administered to him"—and are inconsistent with Defendant's position on appeal that he was not the driver of the vehicle involved in this traffic stop.

Viewing the above evidence in the light most favorable to the ruling of the trial court, in the context of Defendant's stipulation through his counsel as to his identity, as previously discussed *supra*, there

---

2. Defendant chose not to include the trial exhibits in the legal file or deposit them with this Court as allowed by Rules 81.12(e) and 81.16, and Rule 4 of the Southern District Special Rules. When an exhibit is omitted from the record on appeal and is not deposited with the appellate court, "its intendment and content will be taken as favorable to the trial court's ruling and as unfavorable to the appellant." *State v. Hawkins*, 328 S.W.3d 799, 810 n. 3 (Mo.App.2010) (quoting *State v. Davis*, 242 S.W.3d 446, 449 n. 1 (Mo.App. 2007)).

was sufficient evidence before the trial court for it to have reasonably inferred and found that Defendant was the individual operating the motor vehicle in question. Defendant's first point is denied.

### Point II—Evidence of Prior Conviction

█ In his second point, Defendant claims that the State failed to adduce sufficient evidence of a "prior conviction, plea of guilty, or finding of guilt in an intoxication-related traffic offense," as required by section 577.023.16. That subsection provides, in pertinent part:

> Evidence of a prior conviction, plea of guilty, or finding of guilt in an intoxication-related traffic offense ... *shall include but not be limited to* evidence of convictions received by a search of the records of the Missouri uniform law enforcement system [MULES] maintained by the Missouri state highway patrol.

Section 577.023.16 (emphasis added). Specifically, Defendant argues that the phrase "shall include" requires the State to prove prior convictions, pleas of guilty, or findings of guilt with "evidence of convictions received by a search of the records of the Missouri uniform law enforcement system maintained by the Missouri state highway patrol."[3] Defendant offers no authority for this interpretation other than a definition of "shall" from Black's Law Dictionary, which Defendant truncates as: "1. Has a duty to; more broadly, is required to <the requester shall send notice> <notice shall be sent> .... Only sense 1 is acceptable under strict standards of drafting."[4]

Defendant's singular focus on "shall" is misguided because it ignores the plain language of the statute that immediately follows "shall include" with "*but not be limited to*" Section 577.023.16 (emphasis added). This qualifier is not superfluous; it must have meaning or the legislature would not have included it. *Norwin G. Heimos Greenhouse, Inc. v. Dir. of Revenue,* 724 S.W.2d 505, 508 (Mo. banc 1987); *Pitts v. Williams,* 315 S.W.3d 755, 762 (Mo.App.2010). In *State v. Thomas,* 969 S.W.2d 354 (Mo.App.1998), the Western District of our Court addressed the construction of this language, which at that time was codified in section 577.023. 14, RSMo 1994. *Thomas,* 969 S.W.2d at 356. The Court held "the legislature did not limit the evidence of prior convictions to the MULES system." *Id.* "As evinced by the statutory language, 'but not be limited to,' the legislature recognized that other sources of evidence would contain suffi-

---

**3.** This subsection was amended effective August 28, 2010, to read:

> ... shall include but not be limited to evidence received by a search of the records of the Missouri uniform law enforcement system, including criminal history records from the central repository or records from the driving while intoxicated tracking system (DWITS) maintained by the Missouri state highway patrol, or the certified driving record maintained by the Missouri department of revenue.

Section 577.023.16, RSMo Cum.Supp.2010.

**4.** The complete definition is:

> 1. Has a duty to; more broadly, is required to <the requester shall send notice>

<notice shall be sent>. ● This is the mandatory sense that drafters typically intend and that courts typically uphold. [Cases: Statutes 227.] 2. Should (as often interpreted by courts) <all claimants shall request mediation> 3. May <no person shall enter the building without first signing the roster>. ● When a negative word such as not or no precedes shall (as in the example in angle brackets), the word shall often means may. What is being negated is permission, not a requirement. 4. Will (as a future-tense verb) <the corporation shall then have a period of 30 days to object>. 5. Is entitled to <the secretary shall be reimbursed for all expenses>. ● Only sense 1 is acceptable under strict standards of drafting.
BLACK'S LAW DICTIONARY (9th ed.2009).

cient indicia of reliability to establish the existence of prior convictions for driving while intoxicated." *Id.* We agree. Defendant's second point is denied.

### Decision

The trial court's judgment is affirmed.

BURRELL, P.J., and RAHMEYER, J., concur.