**STATE of Missouri, Plaintiff–Respondent,**

**v.**

**Steven Ray ABBOTT, Defendant–Appellant.**

**No. SD 31916.**

Missouri Court of Appeals, Southern District, Division One.

Nov. 6, 2013.

Daren K. Todd, Malden, MO, for Appellant.

Chris Koster (Attorney General), Jessica P. Meredith, Jefferson City, MO, for Respondent.

NANCY STEFFEN RAHMEYER, Presiding Judge.

A jury found Steven Ray Abbott ("Appellant") guilty of statutory sodomy in the first degree and child molestation in the first degree of a child who was thirteen at the time of the offenses ("Child"). Appellant waived sentencing by the jury, and the trial court sentenced Appellant to twelve years in the Department of Corrections on each count with the sentences to run concurrently. Appellant appeals claiming the trial court erred (1) in denying his motions for judgment of acquittal at trial because the evidence was, in the absence of an in-court identification, insufficient to establish beyond a reasonable doubt that Appellant was the person who committed the crimes charged, and (2) in excluding "extrinsic evidence that [Child] had made prior false allegations of sexual abuse." Finding no merit in either claim, we affirm the trial court's judgment.

**Factual and Procedural History**

Appellant was charged with statutory sodomy in the first degree, and child molestation in the first degree. In a pretrial hearing under section 491.075[1] the day before Appellant's jury trial began, defense counsel attempted to ask Child's mother ("Mother") about "any kind of other problem involving [Child] with regard to any allegation of sexual abuse." The prosecutor objected, and the trial court sustained the objection based on defense counsel's failure to limit the question to "false" allegations.

The next day, before opening statements, the trial court permitted defense counsel to make an offer of proof outside the presence of the jury. The purpose of the offer of proof was to determine whether Appellant would be permitted at trial to introduce extrinsic evidence of an alleged false accusation by Child of sexual abuse by a different individual than Appellant more than five years before the offenses in this case. Mother testified Child made an allegation when she was "six or seven" that an individual known as "Cajun" "touch[ed]" her when ["s]he was asleep on the couch." Mother reported the allegation to the police. "As far as [Mother] know[s]," the police did not pursue the allegation. Child never told Mother the allegation against Cajun was "untrue," and never "recanted" the allegation.

Child testified and confirmed that an individual she knew as "Gage" or "Cajun" had sexually assaulted her when she was seven and sleeping on a couch at Mother's home. "[A] month or two" later after talking with her father, Child "personally" told the police about this event—she testified:

> I told [the police], uh, what happened and they told me that they didn't really know what to do because it was already too late for trying to, uh, get any evidence and I was seven-years-old so they didn't think I knew what I was talking about.

Child was never asked by the prosecuting attorney to testify about this event. Child never "recanted" her allegation or indicated her allegation was "false or not true."

In ruling on the offer of proof, the trial court found that Child's "credibility [was] a central issue," and that her prior allegation

---

1. Unless otherwise specified, all section references are to RSMo, Cum.Supp.2008.

was "made to law enforcement" and was "the same or substantially similar" to her allegation in this case, but that there was "no evidence" to show Child's prior allegation was "false" and "therefore [Appellant] will not be permitted to inquire [before the jury] as to" the prior allegation. The offer of proof was renewed at trial, and the objection was again sustained.

Child was thirteen in January 2010. At trial, Child testified that she was at the home of Appellant, her second cousin, on the night of the incident. Also present were two female sisters of Appellant, Jennie and Jessica ("Jessie"), and Jennie's boyfriend, Caleb. Appellant left the house before Child, Jessie, Jennie and Caleb went to sleep.

Child fell asleep in a recliner with Jennie and Caleb until Child "woke up and crawled onto the couch." Child was wearing underclothing, pajama bottoms, a t-shirt and possibly socks. Appellant was not there when Child moved to the couch. At some point, Jennie and Caleb moved to a bedroom; Jessie was asleep on another couch. The next thing Child remembers is:

[Child]: . . . I woke up to [Appellant] layin' beside me with his hand up my pant, up my pajama bottoms and he was rubbing his foot against my breast and I kicked and screamed and got up and ran to Jennie and I woke her up. I was shakin' her—

[Prosecutor]: Okay, let, let's stop there for just a second. All right. At what point did you figure out who, who was laying there with you?

[Child]: When I opened my eyes.

"[H]is fingers were inside" Child, and "he was licking my toe."

Jennie called her mother, and Jennie's mother picked up Child, Jessie, Jennie and Caleb. Jennie's mother took Child home.

Child told Mother, and Mother took Child to a hospital.

Child told a law enforcement officer on January 23 that, at Jennie's request, Child "went and stayed the night with Steven Abbott."

In an interview with a forensic interviewer, Child identified Steven as "Steven Laundrow," and said Steven was Jessie and Jennie's brother. Child further identified Jennie as "Jennie Laundrow." Child spelled or said Jessie's last name as "Laundrow." On cross examination, Child explained:

[Child]: I got a spelling disorder or I got a learning disability so it's Luttrell but I spelled it wrong.

[Appellant's Counsel]: Now, I'm not trying to be difficult but you didn't spell anything, did you; didn't you just say what the name was?

[Child]: Uh, if I didn't spell it then, yeah, I did tell her but it's Luttrell.

In a statement to a police officer, "Mr. Abbott" wrote that Child "was at his apartment . . . that night," and "that he was asleep there on the couch with her." Appellant's written statement was admitted into evidence. Further facts will be set forth as needed for a discussion of the points.

After the State rested and at the close of all the evidence, Appellant requested that the case be dismissed because the victim failed to identify Appellant physically as the person who committed the acts charged. The trial court denied both requests noting Child "did, on more than one occasion, refer to the Defendant by name as Steven Abbott as the person having done this."

The jury found Appellant guilty of both counts. Appellant waived sentencing by the jury, and the trial court sentenced Appellant to twelve years in the Depart-

ment of Corrections on each count with the sentences to run concurrently.

### Point I—Sufficiency of the Evidence to Identify Appellant as the Person Who Committed the Crimes Charged

In his first point, Appellant argues that the trial court erred in denying his motions for judgment of acquittal at trial because the evidence was, in the absence of an in-court identification, insufficient to establish beyond a reasonable doubt that Appellant was the person who committed the crimes charged. Appellant's argument is incorrect because it ignores significant evidence that Appellant was the person who committed the crimes charged.

 We review the denial of a motion for judgment of acquittal under the same standard of review used in reviewing a challenge to the sufficiency of the evidence to support a jury's guilty verdict. *State v. Simrin*, 384 S.W.3d 713, 718 (Mo.App.S.D. 2012). And, as we observed in *Simrin:*

> In reviewing a challenge to the sufficiency of the evidence, this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt. *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). We view the evidence and all reasonable inferences therefrom in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the jury's verdict. *Id.* Evidence is sufficient to support guilt if any reasonable inference supports guilt, even if other equally valid inferences do not. *State v. Breedlove*, 348 S.W.3d 810, 814 (Mo.App.S.D.2011). " 'The trier of fact determines the credibility of the witnesses, and may believe all, some or none of the testimony of a witness.' " *State v. Edwards*, 280 S.W.3d 184, 189 (Mo.App.E.D.2009) (quoting *State v.*

*Burse*, 231 S.W.3d 247, 251 (Mo.App. E.D.2007)).

*Id.*

 "An essential element of any crime is that the person charged with an offense is the person who committed the offense, and the State bears the burden of proving this fact to the trial court." *State v. Graves*, 358 S.W.3d 536, 539–40 (Mo. App.S.D.2012). Appellant correctly argues that *"one* method the State may use to meet this burden is the positive in-court identification by an eyewitness"; however, the State is "not limited to this one method in proving that the person charged with the offen[s]e is the person who committed the offense." *Id.* at 540.

 Although, in this appeal, Appellant correctly notes that no trial witness physically identified Appellant as the person who committed the crimes charged, Appellant's argument overlooks the following identification evidence. Child testified: Child knew "Steven Abbott, the Defendant here," and "[h]e" is her second cousin. Jennie and Jessica Luttrell are "his" sisters. In the evening on Friday, January 22, 2010, Child, "Jessie, Jennie and Caleb all walked to his house because he offered them, uh, Jessie and Jennie to spend the night at his house." "Defendant" left the house before Child, Jessie, Jennie and Caleb went to sleep. "Defendant" was not at the house when Child moved to the couch. The next thing Child remembers is: "I woke up to Steven layin' beside me[.]"

Child also testified as follows:

> [Prosecutor]: [Child], when you were going out of the house, Steven's apartment there.
>
> [Child]: Yes, sir.
>
> [Prosecutor]: Was he still in the living room at that point?

[Child]: Yes, sir, he was still on the couch and he was actin' like he was asleep.

Child also told a law enforcement officer on January 23 that Child "went and stayed the night with Steven Abbott." Child did so at Jennie's request.

Jennie, Appellant's sister, testified as follows. Jennie knew "the Defendant, Steven Abbott," and confirmed "[h]e" was her brother, Jessie Luttrell was her sister, and Child was her "cousin." On the night of January 22 and early morning hours of January 23, 2010, Jennie, Jessie, Caleb Brown and Child were "[o]ver at Steven's house." The "Defendant, Mr. Abbott," left and "went over to a friend's house." After Jennie and Caleb went into the bedroom and went to sleep, the next thing Jennie remembers is Child "going in the bedroom, waking me up. She was crying and she, and she just said, Steven touched her." When Jennie went into the living room, she observed "Steven" "on the couch," and his eyes were open before he quickly shut them.

Caleb testified as follows. After Child woke Caleb up, she said "Steven raped her." When Caleb walked into the "front room," he observed "Mr. Abbott" "on the couch." On cross examination in response to the question "[d]id you know Steven Abbott," Caleb responded "I seen him a couple of times and I was introduced to him a couple of times before I came over and stayed the night with him."

Jessica testified as follows. Jessica knew "the Defendant, Steven Abbott," and confirmed "[h]e" was her brother, Jennie was her sister, and Child was her "cousin." Jessica remembered "going over to [her] brother's house with Jennie and [Child] and Caleb Brown." Jessica also remembered falling asleep in a "loveseat" in the living room, and waking up to Child "screamin' for my sister." In a statement

to a police officer at the hospital, Jessica wrote Child "told us Steven had touched her," and "Steven was pretending to be asleep."

Mother testified as follows. On the evening of Friday, January 22, 2010, Child "went to Steven Abbott's house" with "Jennie and Jennie's boyfriend, Caleb and Jessie." About "six o'clock" the next morning, Child "come in and told me that Steven had touched her private parts."

Beth Baugh, a forensic interviewer and victim's advocate, testified as follows. Baugh interviewed Child on January 27, 2010. Child told Baugh that, on January 22, 2010, she "spen[t] the night ... at Steven's house with Jessie, Jennie and Caleb," and "awoke ... with Steven on the same couch as her and he was touching her."

Finally, in a statement to a police officer, "Mr. Abbott" wrote that Child "was at his apartment ... that night," and "that he was asleep there on the couch with her."

This testimony clearly was sufficient to permit a reasonable juror to infer beyond a reasonable doubt that Appellant was the person who committed the charged crimes. The jury was aware Child misstated Appellant's last name in the forensic interview. In the context of the other evidence in the case, Child's misstatement was understandable, did not indicate the existence of a second person other than Appellant who was responsible for the charged crimes, and would not have prevented a reasonable juror from inferring beyond a reasonable doubt that Appellant committed the crimes charged.

Appellant's first point is denied.

*Point II—Exclusion of Extrinsic Evidence of Prior Report of Sexual Abuse*

In his second point relied on, Appellant claims that the trial court erred in

excluding "extrinsic evidence that [Child] had made prior false allegations of sexual abuse." We disagree because Appellant did not show Child's prior report of sexual abuse was false.

We review a trial court's decision to exclude evidence for abuse of discretion and resulting prejudice. *State v. Wolfe*, 344 S.W.3d 822, 837 (Mo.App.S.D.2011); *State v. Mason*, 95 S.W.3d 206, 211 (Mo. App.S.D.2003); *State v. Barriner*, 111 S.W.3d 396, 400 n. 4 (Mo. banc 2003). "A trial court abuses its discretion in excluding evidence if its decision shocks the sense of justice or indicates an absence of careful consideration." *Wolfe*, 344 S.W.3d at 837.

Our analysis is guided by our Supreme Court's decision in *Mitchell v. Kardesch*, 313 S.W.3d 667 (Mo. banc 2010). In that decision, the Supreme Court observed:

"As a general proposition, the credibility of witnesses is always a relevant issue in a lawsuit." *State v. Smith*, 996 S.W.2d 518, 521 (Mo.App.1999). Impeachment provides a tool to test a witness's perception, credibility, and truthfulness, which is essential because a jury is free to believe any, all, or none of a witness's testimony. *State v. Hineman*, 14 S.W.3d 924, 927 (Mo. banc 1999); *Talley v. Richart*, 353 Mo. 912, 185 S.W.2d 23, 26 (1945) (a party impeaches a witness to discredit the witness in the eyes of the fact-finder).

. . . .

When a person, regardless of whether a party, is being questioned on the witness stand, then long-standing Missouri law holds that the person may be asked about specific instances of his or her own conduct that speak to his or her own character for truth or veracity, even where the issue inquired about is not material to the substantive issues in the case.

*Id.* at 675, 677.

"Prior false allegations are relevant to the witness' credibility. The relevance of the prior false allegation is thus derived primarily from the fact that the allegation was false[.]" *State v. Long*, 140 S.W.3d 27, 31 (Mo. banc 2004). The Supreme Court further instructed that the defendant has the burden of establishing the admissibility of "prior false allegations" by a preponderance of the evidence, and "may rely upon the full panoply of available evidence" to do so. *Id.* at 32.

After hearing Appellant's offer of proof, the trial court specifically found there was "no evidence" to show Child's prior allegation was "false." This finding clearly was not an abuse of the trial court's discretion as the finding is fully supported by the offer of proof. The closest Appellant came in his offer of proof to showing Child's prior allegation was false was to solicit evidence that indicated law enforcement did not pursue Child's prior allegation criminally. Criminal investigations are not pursued for many reasons that are independent of the actual or perceived truthfulness of the victim's allegations. These reasons include a belief that the victim's allegations cannot be corroborated sufficiently to meet the sovereign's obligation to prove its criminal allegations beyond a reasonable doubt—because of the passage of time or a simple lack of other evidence—and a lack of resources to pursue all reported crimes. If in fact Child's prior report of sexual abuse was not pursued by law enforcement, that does not mean that Child's report necessarily, likely, or even possibly, was false because the fact the report was not pursued says nothing about *why* the report was not pursued.

In the words of *Mitchell*, 313 S.W.3d at 677–79, a prior report of sexual abuse that

Appellant failed to show was false does not "speak to," does not "b[ear] on," and is not "relevant" to the "ultimate issue of a witness's credibility." *Id.* As a result, Appellant was not entitled either to cross examine Child about her prior report of sexual abuse or to introduce extrinsic evidence of that report for the purpose of impeaching Child's credibility because the report was neither logically nor legally relevant to discrediting Child's credibility.

The trial court did not abuse its discretion in excluding extrinsic evidence of Child's prior report of sexual abuse in the absence of evidence showing the report was false, and we deny Appellant's second point.

We affirm the trial court's judgment.

DANIEL E. SCOTT, J., and WILLIAM W. FRANCIS, JR., C.J., Concur.