STATE of Missouri, Respondent,

v.

Brian L. BREEDLOVE, Appellant.

No. SD 30984.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 20, 2011.

Nancy R. Price, Springfield, MO, for Appellant.

Chris Koster, Attorney General and Timothy A. Blackwell, Assistant Attorney

General, Jefferson City, MO, for Respondent.

**WILLIAM W. FRANCIS, JR.,**
Presiding Judge.

Following a bench trial, Brian L. Breedlove ("Breedlove") was found guilty of child abuse. Breedlove contends insufficient evidence supported the trial court's judgment and the trial court erred in admitting the testimony of law enforcement officers regarding the severity of the bruising on the child. Finding no merit to Breedlove's claims, we affirm.

## Factual and Procedural History

Breedlove was charged with the class C felony of abuse of a child in violation of section 568.060.[1] Breedlove waived his right to a jury trial and was tried by the court on May 28, 2010. Viewed in the light most favorable to the judgment, the following evidence was adduced at trial.

On January 5, 2007, Officer Sean Vorse ("Officer Vorse") and Detective David Southard ("Detective Southard") initiated an investigation of child abuse of M.B., Breedlove's son, based on a hotline call. Dawnella Bennett, a case worker for the Department of Family Services ("DFS"), accompanied Officer Vorse and Detective Southard to the residence of Geraldine Breedlove ("Geraldine"),[2] Breedlove's mother. At the residence, they advised Geraldine of the allegation of child abuse involving M.B. and requested they be allowed to see M.B.'s hip area where the alleged bruising was located. M.B. was two years old at the time. Geraldine removed M.B.'s diaper. The officers observed bruising on M.B.'s buttocks and photographed the bruises. Additionally, there was a cut under M.B.'s left eye, which they also photographed. These photographs were admitted into evidence during trial. The officers believed the amount of bruising was excessive. Officer Vorse took "emergency custody" of M.B.

Subsequently, Officer Vorse and Detective Southard located Breedlove and placed him under arrest for child abuse. Breedlove signed a waiver of his *Miranda* rights.[3] After Officer Vorse asked Breedlove if he knew how M.B. got the bruising and cut under his eye, Breedlove responded that some of the bruising was possibly from rough play, but admitted he had also disciplined M.B. Breedlove admitted he spanked M.B. with his hand after pulling M.B.'s diaper aside. When asked how many times Breedlove had spanked M.B., Breedlove said "a lot." When asked for a specific number, Breedlove said he spanked M.B. four or five times in four hours on January 1, 2007. Breedlove explained that he spanked M.B. because M.B. would not go to bed, was eating candy out of the trash, and was repeatedly putting toys in the toilet. Breedlove mentioned that he dropped M.B. off at Geraldine's house on January 4.

Breedlove also provided a handwritten statement stating, in part, that he spanked M.B. through his diaper.[4]

At trial, Officer Vorse testified that he had attended 470 hours of training at "Drury Police Academy," and he had been employed by the Ozark Police Department for twelve years. During the State's direct examination of Officer Vorse, the fol-

---

1. All references to statutes are to RSMo 2000 unless otherwise specified.

2. Because Appellant and his mother share the same surname, we refer to Geraldine Breedlove by her given name. We mean no familiarity or disrespect.

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. This statement appears to have been admitted as Defendant's Exhibit 1, but was not deposited with this Court.

lowing exchange occurred without objection:

Q Did you find that it was concerning to you about the bruising on the—on the buttocks?

A Just the amount of them.

Q Did you feel that that was excessive?

A Yes, I did.

Detective Southard testified that he had attended 120 hours at an academy at Drury University to be trained as a police officer, had been employed by the Ozark Police Department for fifteen years, and had previously been employed for a short time by the Springfield Police Department. Detective Southard testified he had attended numerous training classes and seminars related to child abuse.

On direct examination by the State, Detective Southard was asked without objection:

Q You looked at his buttocks and his hips; is that right?

A That is correct.

Q And you viewed those bruises, right?

A Yes, I did.

Q And what did you—if anything, did you think about those bruises?

A I thought they were pretty severe for any type of spanking, especially after the interview when—in his statement he said that he spanked this child through the diaper.

And to me, you know, especially spanking a kid through a diaper and you are leaving bruises, you are spanking the kid pretty hard.

The following exchange occurred on cross-examination of Detective Southard:

Q Isn't it true that bruises look worse over time?

A Uh, then again, I can only speculate, because I don't have that medical knowledge. It depends, I'm sure, on how hard that bruise is and what was—what was used to make that bruise.

Q It depends on a lot of factors that aren't really in your knowledge; isn't that right?

A Correct.

Q So your statement that the bruising looked excessive to you is not based on any medical knowledge; isn't that correct?

A No. Just—that's just expressed from being a parent, going through spanking children and never seen [sic] bruises.

No objections were made to the officers' testimony regarding the severity of M.B.'s bruising.

The trial court found Breedlove guilty of child abuse and sentenced Breedlove to five years in the custody of the Department of Corrections, but suspended execution of sentence and placed Breedlove on five years' probation. This appeal followed.

Breedlove's first point relied on contends the trial court erred because insufficient evidence supported his conviction in that the evidence did not prove each element of child abuse beyond a reasonable doubt. Breedlove also alleges the trial court committed plain error in allowing the officers to testify as lay witnesses that they believed the bruising on M.B. was excessive or severe because they did not posses any special knowledge or skill and the State did not present any other evidence to support its claim that the bruising was cruel and inhuman, making the admission of such evidence outcome determinative. The issues pertinent to our resolution of this matter are:

1. Was there sufficient evidence to support Breedlove's child abuse conviction?

2. Did the trial court plainly err in admitting the officers' testimony regarding the severity of the bruising?

### Point I: Sufficiency of Evidence

First, we address Breedlove's sufficiency-of-evidence argument. Specifically, Breedlove claims: (1) the evidence does not show he spanked M.B. in a cruel and inhuman manner as required under section 568.060; (2) there is insufficient evidence to show Breedlove actually caused the bruising; and (3) the evidence was insufficient to prove Breedlove "knowingly" inflicted cruel and inhuman punishment to M.B.

### Standard of Review

■ In reviewing the sufficiency of evidence in a court-tried criminal case, the standard of review is the same as in a jury-tried case. *State v. Craig*, 287 S.W.3d 676, 681 (Mo. banc 2009). "[T]his Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt." *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *Id.* "Even if the evidence would support two equally valid inferences, only the inference that supports the finding of guilt can be considered." *State v. Latall*, 271 S.W.3d 561, 568 (Mo. banc 2008). " 'The function of the reviewing court is not to reweigh the evidence, but to determine if the conviction is supported by sufficient evidence.' " *State v. McCleod*, 186 S.W.3d 439, 443 (Mo.App. W.D.2006) (quoting *State v. Mann*, 129 S.W.3d 462, 467 (Mo.App. S.D.2004)). The reliability, credibility, and weight of witness testimony are for the fact-finder to determine, and it is within the fact-finder's province to believe all, some, or none of the witness' testimony in arriving at its decision. *State v. Cannafax*, 344 S.W.3d 279 (Mo.App. S.D.2011).

### Analysis

Section 568.060.1(1) provides that a person commits the crime of abuse of a child if such person "[k]nowingly inflicts cruel and inhuman punishment upon a child less than seventeen years old[.]" Pursuant to section 562.016.3(2), a person acts knowingly with respect to the result of an individual's conduct "when he is aware that his conduct is practically certain to cause that result." As used in § 568.060, "punishment" includes "severe, rough, or disastrous treatment." *State v. Silvey*, 980 S.W.2d 103, 108 (Mo.App. S.D.1998).

■ First, we address whether the evidence was sufficient to establish Breedlove inflicted cruel and inhuman punishment on M.B.

Breedlove acknowledges there are numerous cases that have held excessive spanking sufficiently supports a conviction under section 568.060. *See State v. Sumowski*, 794 S.W.2d 643, 646 (1990) ("The direct and circumstantial evidence that defendant struck [the victim] in the face with sufficient force to cause bruises which would be visible two days later is a sufficient showing" that the defendant inflicted cruel and inhuman punishment); *see also State v. Still*, 216 S.W.3d 261, 266 (Mo. App. S.D.2007) (holding that punishment is "cruel and inhuman" where a child is "struck with sufficient force and violence so as to leave severe bruises"); *Silvey*, 980 S.W.2d at 107 (defendant inflicted "cruel and inhuman punishment" by spanking his stepsons with a wooden paddle hard enough to cause severe bruising that persisted for several days); *State v. Lauer*, 955 S.W.2d 23, 26 (Mo.App. S.D.1997) (evidence that defendant struck two-year-old child with enough force to result in serious bruising on child's buttocks, anterior and

posterior thighs, and lower back was sufficient to show "cruel and inhuman punishment"). Breedlove, however, claims these reported cases involving child abuse from spanking are distinguishable because the defendants' conduct in those cases was more egregious. While we agree these cases contain more egregious facts than the case at hand, we must judge this case on its own facts. *See State v. Wilson*, 333 S.W.3d 526, 527 (Mo.App. S.D.2011).

 Here, two admitted photographs show bruising on M.B.'s buttocks and hip. Further, the officers, who saw the bruising firsthand, testified that the amount of bruising on M.B. was "excessive" and indicated that if you are "spanking a kid through a diaper and you are leaving bruises, you are spanking the kid pretty hard." M.B. was only two years old at the time. In deferring to the trier of fact's determinations on the reliability, credibility, and weight of witness testimony as required by our standard of review, we find sufficient evidence from which a reasonable trier of fact could find beyond a reasonable doubt that Breedlove's punishment of M.B. was cruel and inhuman. We may not substitute our judgment for that of the trial court and may not reverse even if we believe we would have weighed the evidence differently.

 Additionally, we note that Breedlove's admitted spanking of M.B. multiple times, the resulting bruising, and the officers' testimony permit an inference that it was in fact "severe" or "rough" treatment. Thus, it also meets the punishment element under section 568.060.

 Breedlove alternatively argues that if the bruising shown in the two photographs is sufficient to show cruel and inhuman treatment, then the evidence is insufficient to prove Breedlove's actions caused the bruising because Breedlove did not admit to causing any bruising, only to spanking M.B. However, Breedlove admit-ted M.B. was in his custody on January 1, 2007, and that he spanked M.B. on that day. Breedlove dropped M.B. off at Geraldine's house on January 4, 2007, the night before M.B. was taken into custody. From this evidence, a reasonable trier of fact could infer that Breedlove inflicted the bruising injuries upon M.B.

 Next, Breedlove contends there was insufficient evidence to prove Breedlove "knowingly" inflicted cruel and inhuman punishment on M.B., as required by section 568.060. Again, a person acts "knowingly" "when he is aware that his conduct is practically certain to cause that result." § 562.016.3(2). "It is axiomatic that direct proof of a defendant's intent is rarely available." *Still*, 216 S.W.3d at 267. Thus, intent may be established by circumstantial evidence. *Id.* "The trier-of-fact also is permitted to infer a defendant's intent from the surrounding facts or from the act itself." *Id.*

Here, Breedlove intentionally spanked M.B., a very young child, four or five times in a four-hour period. The spankings were administered with sufficient force to cause bruising on M.B.'s buttocks. Thus, the trier of fact could have found beyond a reasonable doubt that Breedlove acted "knowingly."

As such, we find sufficient evidence supported Breedlove's child abuse conviction. Point I is denied.

### Point II: Admissibility of Testimony

Finally, we determine whether the trial court plainly erred in allowing the officers to testify as lay witnesses as to the severity of M.B.'s bruising.

### Standard of Review

 Breedlove concedes he failed to properly preserve this issue for review and requests plain error review pursuant to

Rule 30.20.[5] Plain error review is discretionary and involves a two-step analysis. *State v. Jennings*, 322 S.W.3d 598, 601 (Mo.App. S.D.2010). First, this Court considers the facts and circumstances to facially determine if there was plain error—meaning "evident, obvious and clear" error. *Id.* Only if this Court identifies plain error do we proceed to the second step of determining whether manifest injustice, or a miscarriage of justice resulted. *Id.* Breedlove has the burden to establish the trial court committed plain error, and that there has been a manifest injustice or a miscarriage of justice. *State v. Royer*, 322 S.W.3d 603, 606 (Mo.App. S.D.2010).

### Analysis

Breedlove specifically contends the lay-opinion testimony of Officer Vorse and Detective Southard regarding the excessiveness of M.B.'s bruises was inadmissible because the officers testified they did not have any special expertise or training regarding bruises or bruising and "essentially based their opinions that the bruises were excessive on their experiences as 'parents.'" Opinion testimony is generally inadmissible when the trier of fact is as capable as the witness to draw conclusions from the facts provided. *Shockley v. State*, 147 S.W.3d 189, 194 (Mo.App. S.D. 2004). However, a witness who personally observed events may testify to " 'his 'matter of fact' comprehension of what he has seen in a descriptive manner which is actually a conclusion, opinion or inference, if the inference is common and accords with the ordinary experiences of everyday life.'" *State v. Davidson*, 242 S.W.3d 409, 414 (Mo.App. E.D.2007) (quoting *State v. Gray*, 731 S.W.2d 275, 275 (Mo.App.W.D. 1987)).

Here, we find no evident, obvious and clear error in the admission of the officers' testimony regarding the severity of the bruising. First, both officers described their extensive law enforcement training, and Officer Southard testified he attended numerous trainings and seminars related to child abuse. This evidence would permit an inference that the officers had more experience and knowledge than an ordinary lay person in recognizing excessive bruising. Additionally, we find no evident, obvious and clear error in permitting the officers to testify as to their matter-of-fact comprehension of what they personally observed because the inferences made were common and accords with the ordinary experiences of everyday life. Finding no plain error, we need not proceed to the second step of plain error review. Point II denied.

Accordingly, the judgment of the trial court is affirmed.

BATES and SCOTT, JJ., Concur.

---

5. All rule references are to Missouri Court Rules (2011).