

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI, )
)
    Respondent, )
)
  vs. )   No. SD32709
)   Filed: May 6, 2014
JACOB W. BOOK, )
)
    Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Daniel W. Imhof, Associate Circuit Judge

### **AFFIRMED**

Jacob W. Book ("Book") appeals his convictions of the class B misdemeanors of driving while intoxicated ("DWI") (Count I) and operating a motor vehicle in a careless and imprudent manner (Count II). Following a bench trial, Book was sentenced by the trial court on Count I to ninety days in jail, with suspended execution of that sentence and two years' unsupervised probation under certain conditions; and on Count II, to thirty days in jail and suspended execution of that sentence with two years' unsupervised probation, to run concurrent with Count I. We affirm the judgment and sentence of the trial court.

## Facts and Procedural Background

The record reveals that at approximately 1:00 a.m. on April 8, 2012, an off-white 1982 Ford Granada, going southbound on Grant Avenue, was observed to be driving erratically. While initially in its appropriate lane of traffic, the vehicle ultimately crossed into the lane for oncoming traffic, proceeded up onto the sidewalk sideswiping utility poles and wrought iron handrails, and ultimately came to rest against another utility light pole severed in half from the impact. Officers on the scene identified Book as the driver, observed signs of impairment, and while he refused medical treatment, had Book transported to the emergency room. At the emergency room, blood was drawn from Book and sent to the Missouri Highway Patrol crime lab for testing.

On June 15, 2012, a probable cause statement was issued stating there was probable cause to believe that: (1) Book committed one or more criminal offenses; (2) the "crimes" happened on April 8, 2012; (3) Book was suspected of "being intoxicated and causing an accident"; and (4) blood taken from Book at the hospital showed a positive result for "the drug THC."

On July 27, 2012, Book was charged by misdemeanor information with the class B misdemeanor of driving while intoxicated, pursuant to section 577.010,[1] in that he "operated a motor vehicle while under the influence of a drug or drugs[,]" and the class B misdemeanor of careless and imprudent driving, pursuant to section 304.012, "by leaving the roadway and striking a pole, and thereby endangering the property of another." The probable cause statement was the basis for the misdemeanor information and was attached thereto and "made a part"

---

[1] All references to section 577.010 are to RSMo. Cum.Supp. 2010. All other references to statutes are to RSMo 2000, unless otherwise indicated. All rule references are to Missouri Court Rules (2013).

thereof. A criminal summons was issued for Book on August 3, 2012. Trial was scheduled for January, 28, 2013.

At trial, Daniel Brewer ("Brewer") testified he was riding his bicycle on the left side of the street, northbound on Grant, in Springfield, Greene County, Missouri. Brewer initially observed a southbound white car approaching him in its correct lane about two blocks to his north. Shortly after Brewer initially observed the southbound white car coming over a hill toward him, he saw the white car "swerve like this, like very slowly over into, like, oncoming traffic – but there was no traffic – and over. And then he hit the sidewalk and hit a bunch of poles and went through yards, kind of." The white car then crashed head-on into a pole and came to a stop. There was extensive front-end damage to the vehicle. Brewer saw Book emerge from the white car and lie down on the ground clutching his chest and stomach while making "pain noises." Book's speech was incoherent: "He was saying random stuff. Like, . . . he was in bad pain." Brewer summoned aid for Book from a nearby restaurant.

Jennifer Sandage ("Officer Sandage"), a patrol officer with the Springfield Police Department, was the first officer on scene. She testified she was a six-year veteran with the department and had training in detecting intoxicated drivers, as well as people under the influence of marijuana. Upon arrival at the scene, she observed an off-white 1982 Ford Granada automobile on the east side of the road facing southwest, which had obviously been involved in an accident. She also observed a utility light pole that had been sheared in half by Book's vehicle, damage to several other utility poles, and damage to wrought iron handrails leading up to a residence.

Book was in the vehicle when she arrived and she identified him by means of his driver's license. She noted Book's speech was slurred and that his movements were uncoordinated, slow,

3

and unsteady. She also observed Book's eyes to be watery. Based on her training and experience, these observations caused Officer Sandage to believe Book was impaired. Not only was Book's behavior consistent with ingestion of marijuana, but she believed "[t]here was other things on board[.]" Sandage asked Book if he had been drinking and Book said he had two or three beers. Although Officer Sandage saw no signs of physical injury to Book, he complained of physical pain but declined medical treatment. Disregarding Book's resistance to medical treatment, she felt it appropriate to call for emergency medical services.

Officer Mark Stewart ("Officer Stewart"), also with the Springfield Police Department, arrived at the scene shortly after Officer Sandage. Officer Stewart testified he had training and experience in detection of persons intoxicated either with alcohol or with other substances. When he arrived at the scene, Officer Stewart observed "a car that was wrecked out into a pole," Book seated on the sidewalk, and Officer Sandage near the car. When asked, Book first told Officer Stewart he had drank two or three beers but then stated it was actually one large beer. Officer Stewart noted the moderate odor of alcohol on Book's breath and that his "speech was confused." Officer Stewart later overheard Book tell paramedics that he had taken hydrocodone.

Officer Stewart was unable to conduct any field sobriety tests because paramedics had already placed Book on a backboard for transportation to the hospital. Officer Stewart followed the ambulance to the hospital where he read Book the Missouri Implied Consent Law, but Book kept "falling asleep as [he] was reading it to him." Medical personnel gave Book chest rubs to "try and keep him awake." Officer Stewart requested medical personnel draw Book's blood in order to conduct a "chemical test." The blood was drawn and Officer Stewart received and marked the sample. Officer Stewart spent about an hour with Book at the hospital and based on

4

his experience, Book exhibited behavior consistent with someone who had "consumed marijuana."

Book's blood was drawn by Tiffany Smith, a registered nurse who worked in the emergency room at Mercy Medical Center. Book was under her care when he presented at the emergency room for treatment. She had started an IV for Book and at the request of Officer Stewart, she drew a vial of Book's blood, through the IV, in strict accordance with her training and accepted medical practice. She placed a patient sticker on the vial, handed the vial and the Betadine swab to Officer Stewart, and Officer Stewart then marked the vial.

Book's blood was then tested by Kelli Schuldies ("Schuldies"), a criminalist with the Missouri State Highway Patrol crime lab, where her duties included the analysis of blood and urine for alcohol and drugs. By stipulation, Schuldies was accepted as an expert criminalist by the trial court. Schuldies' results were submitted as State's Exhibit 1. Schuldies' testing identified "carboxy-THC," a metabolite or breakdown product of THC, in the sample of Book's blood.[2] Schuldies did not determine how much of the metabolite was in the blood sample, and could not tell from her testing how long it had been in the blood. Schuldies detected no THC, alcohol, or hydrocodone in Book's blood sample.

Following the January 28, 2013 trial, the trial court took various motions and issues under review. One issue involved a motion to suppress and chain of custody issues relating to the lab results. On appeal, Book concedes he "does not appeal the trial court's failure to sustain either his chain of custody objection . . . or his motion to suppress[.]" On March 8, 2013, the trial court made the following written findings:

---

[2] The presence of carboxy-THC in the blood means that at some time in the past, the donor of the blood specimen had ingested THC, which immediately began to "break down" or metabolize due to THC's "half-life" in the blood. "THC, half-life in blood is about one to two and a half days."

5

The Court upon review of all documents, suggestions and evidence finds as follows: Although the Court shares Defense Counsel's concerns regarding chain of custody and the blood test, the Court does not rely on the blood test in finding the Defendant guilty beyond a reasonable doubt on both counts. Referring to the chain of custody issue, the State argues a reliability standard, but all the cases cited by the State also include language that testimony should also indicate the evidence was in substantially the same condition when it was secured as when tested. The State relies on identifying info on the sample and the lab report, satisfying the reliability standard. However, the absence of the evidence in Court seems to ignore the necessity of the officer and chemist testifying as to whether the evidence was in substantially the same condition as when obtained and tested. Regarding the blood test itself, the nurse who drew the blood did not know the source of the tube, but did testify it was sterile. It is of some concern that she would independently remember the tube was sterile without knowing its source. Securing the wrapper for the tube in the same envelope as the tube, as often occurs, would prevent such confusion. Although the issue was not specifically raised, the nurse indicated the blood was drawn through the IV port and tubing which could be problematic regarding the results of the test as the port and tubing is used for other purposes and could, therefore, have unreliable results. The Court is less concerned about the issue of consent. The testimony was that, despite using unusual means of trying to keep the Defendant conscious or awake, such as massaging Defendant's chest, the staff at the hospital was unable to keep him conscious or awake. No refusal should be implied nor a search warrant required when Defendant is essentially unconscious. In finding the Defendant guilty beyond a reasonable doubt, the Court relies heavily on the testimony of the civilian witness at the scene, the testimony that Defendant had considerable problems remaining "conscious", and his own statement that he had consumed hydrocodone and alcohol which would certainly explain his extreme and dangerous driving and subsequent condition. Specifically the Court among other things, relies on the fact that testimony by the civilian witness indicated Defendant "slowly" drifted into the northbound lane while traveling south on Grant, was not aroused by all four tires independently leaving the road, grazing a utility pole, hitting at least one railing on private property before striking a second utility pole head on with sufficient force to sever the pole and total his car. The testimony included references that Defendant was driving partially on the sidewalk and through "yards" in the plural. Clearly he was more than simply sleeping. The Court finds no credible evidence that Defendant's observed conduct had anything to do with unproven injuries which may have resulted from the accident. The court notes that when the first officer arrived, Defendant had returned to his car to secure personal property, declined medical treatment, and only went to the hospital as a result of the officers' exercising their discretion and choosing an abundance of caution to be sure there were no undiscovered problems. None were reported. The arresting officer testified that Defendant's actions and the officer's observations were consistent with driving while intoxicated or impaired by a drug. The fact that the drug was hydrocodone by

Defendant's admission and not marijuana, as suggested by the Assistant Prosecutor, does not change the result.

(Quoted as written).

On April 25, 2013, the trial court found Book guilty on both Counts I and II. The trial court sentenced Book on Count I (DWI) to 90 days in the Greene County Jail, but suspended execution of the sentence and placed Book on two years' unsupervised probation subject to the following conditions: completion of SATOP; 40 hours of community service within 120 days; payment of costs to include the Crime Victim Fund; and restitution of $3,501.21, one-half to be paid within 18 months. As to Count II (careless and imprudent driving), the trial court sentenced Book to 30 days in the Greene County Jail, but suspended execution of sentence and placed him on two years' unsupervised probation. Count II was to run concurrent with Count I. This appeal followed.

Book claims two points of trial court error. First, Book alleges the trial court erred in finding him guilty of DWI and careless and imprudent driving because the State failed to prove beyond a reasonable doubt that he was in a drugged condition, he was impaired while he was driving, he had any drugs in his body, or that any drugs caused Book to be impaired. Book's first point further alleges the State failed to prove beyond a reasonable doubt that he endangered the property of another. Second, Book alleges the trial court erred in determining that the probable cause statement

> sufficiently showed probable cause to support the two count misdemeanor information in which [Book] was charged . . . because the statement of probable cause . . . did not state sufficient facts from which probable cause in support of a charge of driving while intoxicated . . . or a charge of careless and imprudent driving . . . could be determined[.]

Book alleges the probable cause statement failed to include any facts "to support a belief" that Book "had been operating a motor vehicle while allegedly committing the charged crimes and

7

both the crimes of driving while intoxicated and careless and imprudent driving include an essential element of operating a motor vehicle."

The issues for our determination are:

1.     Whether the trial court erred in finding Book guilty of DWI and careless and imprudent driving.

2.     Whether the trial court erred in finding the statement of probable cause stated sufficient facts to support the charges of DWI and careless and imprudent driving.

### Point I:  Sufficient Evidence to Support Convictions of DWI and Careless and Imprudent Driving

In his first point, Book argues there was insufficient evidence to convict him of DWI because there was insufficient evidence to conclude he was under the influence of a drug or drugs while he was driving.  Book also argues in his first point that there was insufficient evidence to convict him of careless and imprudent driving "because there was insufficient evidence that his operation of the motor vehicle was in a careless or imprudent manner or that his driving endangered the property of another."[3]   For ease of discussion, we will look at the evidence related to each conviction separately.

### Standard of Review

In a court-tried case, our review is limited to determining whether there was sufficient evidence from which a reasonable trier of fact could have found each element of the offense to have been established beyond a reasonable doubt.  *State v. Honsinger*, 386 S.W.3d 827, 829 (Mo.App. S.D. 2012).  "We consider only the evidence and reasonable inferences derived therefrom favorable to the judgment and disregard all unfavorable evidence and inferences." *State v. Graves*, 358 S.W.3d 536, 539 (Mo.App. S.D. 2012).  It is not the function of the

---

[3] We note that Book's Point I is multifarious in that it attempts to challenge two separate rulings in a single point relied on.  *Day v. State*, 208 S.W.3d 294 (Mo.App. S.D. 2006) (multifarious point preserves nothing for appellate review).  Multifarious claims in a point relied on violate Rule 84.04(d) and are subject to dismissal.  *Id.* at 295.  However, this court has elected to review Book's claim *ex gratia*.

8

reviewing court to reweigh the evidence. Rather, the reliability, credibility, and weight to be given to a witness's testimony are for the fact-finder to determine, and the fact-finder is entitled to believe some, none, or all. *State v. Breedlove*, 348 S.W.3d 810, 814 (Mo.App. S.D. 2011).

**Analysis**

***DWI Conviction***

Section 577.010.1 provides a "person commits the crime of '[DWI]' if he operates a motor vehicle while in an intoxicated or drugged condition." The term "drugged condition" has been equated with "intoxicated condition" and, as such, the two terms "have been and may continue to be used interchangeably." *State v. Hoy*, 219 S.W.3d 796, 802 (Mo.App. S.D. 2007). The proof necessary to establish driving under the influence of drugs is no different than the proof necessary to make a case for driving under the influence of alcohol. *State v. Savick*, 347 S.W.3d 147, 155 (Mo.App. S.D. 2011). "Intoxication consists of three components: impaired ability, presence of a proscribed substance in the defendant's body at the time of the offense, and a causal connection between the proscribed substance and the defendant's impaired ability." *Honsinger*, 386 S.W.3d at 830.

Here, Book was charged with DWI for operating "a motor vehicle while under the influence of a drug or drugs." Book argues "there was insufficient evidence from which a reasonable fact-finder might have concluded that he was under the influence of a drug or drugs at the time he was driving." In support of his position, Book challenges the proof regarding all three of the components of intoxication. We review the evidence at trial regarding the three components of intoxication in the light most favorable to the judgment. *Id.*

Book challenges the first element of evidence—that Book had an impaired ability to operate a motor vehicle—for the reason that the trial court relied on Brewer's testimony, and "[a]

9

reasonable fact-finder, under the logic of the circumstances, could not had [sic] credited Brewer's ability to relate his own observations from his own particular vantage on his own northward bicycle journey in the southbound lane[.]" Book further argues there was no evidence "that would have reasonably established that Book's post-crash traumatic impairment had been preceded by an independent pre-crash intoxication caused impairment."

The trial court admitted that in finding Book guilty, it relied heavily on Brewer's testimony as a witness at the scene. We will not reweigh evidence, nor will we make determinations on the reliability, credibility, and weight given to a witness's testimony as that is a function of the trial court. *Breedlove*, 348 S.W.3d at 814. The trial court in this matter is entitled to believe some, none, or all of Brewer's testimony. *Id.* However, Brewer's testimony was not the only evidence the trial court specifically admitted to relying upon in finding Book guilty. Additional evidence included testimony that Book had "considerable problems remaining 'conscious', and his own statement that he had consumed hydrocodone and alcohol[.]" The trial court found that this evidence would explain Book's "extreme and dangerous driving[.]"

In deferring to the trial court's determinations on witness credibility, reliability, and weight, we find sufficient evidence from which a reasonable trier of fact could find Book was impaired. "We may not substitute our judgment for that of the trial court and may not reverse even if we believe we would have weighed the evidence differently." *Id.* at 815.

As to Book's behavior after the accident, we note the "trial court could have found that [Book]'s behavior after the accident was more consistent with the actions of someone in a serious automobile accident; however, we leave the credibility determinations of the court with the trial court." *Honsinger*, 386 S.W.3d at 831. We cannot say as a matter of law that Book's

10

actions were those of someone injured in an accident and not those of someone who was impaired. *Id.*

The evidence before the trial court included testimony that after the accident, Book returned to his car to secure his personal property, declined medical treatment, and only went to the hospital because Officer Sandage called emergency medical services. Furthermore, Book exhibited many indicators of intoxication after the accident, including confused and slurred speech; uncoordinated, slow, and unsteady movement; and watery eyes. Also of importance to the trial court in determining impairment was the fact Book "was not aroused by all four tires independently leaving the road, grazing a utility pole, hitting at least one railing on private property before striking a second utility pole head on [sic] with sufficient force to sever the pole and total his car."[4] Book also admitted to drinking alcohol and taking hydrocodone prior to the accident.

As to the second element that a proscribed substance was present in Book's body at the time of the offense, Officer Stewart testified he heard Book tell paramedics that he had taken hydrocodone. Both Officer Sandage and Stewart testified that based on their experience and training, their observations of Book led them to believe he had consumed drugs. A trial court may infer that substances are in a defendant's body at the time of an accident, and may do so

---

[4] Book also argues

> a reasonable fact-finder would have concluded that Brewer caused the accident because Brewer was going the wrong way traveling north in the southbound lane at night into the face of Book lawfully traveling south in the southbound lane and because Book, even though he had the right-of-way in the southbound lane, had an affirmative duty to take evasive action to avoid striking Brewer[.]

The trial court's finding that Book drifted into the northbound lane while traveling south, left the road for the sidewalk, and hit two utilities poles and private railings, would negate Book's argument that Brewer caused the accident because he was going the wrong way. Based on the trial court's conclusions, Book did more than simply fulfill his "affirmative duty to take evasive action to avoid striking Brewer" who was allegedly going "the wrong way."

11

without the necessity of a drug or alcohol evaluation. *Honsinger*, 386 S.W.3d at 831. Here, the presence of drugs in Book's body was supported by not only direct evidence; i.e., Book's own statement, but also the reasonable inference drawn from circumstantial evidence including Book's extreme and dangerous driving, that Book was not "aroused" by his extreme driving and contact with two utility poles and railing, and the officers' observations of Book's behavior and physical indicators of drugs present in Book's body at the time of the accident.[5] *See State v. Meanor*, 863 S.W.2d 884, 887 (Mo. banc 1993).

The third intoxication component is whether there was a causal connection between the proscribed substance and the defendant's impaired ability. *Honsinger*, 386 S.W.3d at 830. The *Honsinger* opinion is instructive in that

> the court was free to consider the officer's opinion that Appellant was intoxicated. Recent consumption of an intoxicant coupled with signs consistent with intoxication evidences causation. *Hoy*, 219 S.W.3d at 807; *Savick*, 347 S.W.3d at 157. The fact that Appellant showed signs of intoxication, including the impaired judgment necessary to hit a parked car, supports an inference that the presence of drugs in his body caused the impairment.

*Id.* at 831.

Here, Book showed numerous signs of intoxication supporting an inference by the trial court that the presence of drugs in his body caused the impairment. One sign was Book's impaired judgment that allowed him to drift into the northbound lane while traveling south, leave the road, drive partially on the sidewalk and through yards, graze a utility pole, hit at least one railing on private property, and strike a second utility pole head-on thus severing the pole and totaling his car. Additional signs include the arresting officer's testimony that Book's actions and the officer's observations were consistent with driving while intoxicated or impaired by a

---

[5] The trial court specifically stated it did "not rely on the blood test in finding [Book] guilty beyond a reasonable doubt on both counts." Although Book argues the trial court erred in ignoring "the science" contained in the forensic laboratory results, we note the results identified carboxy-THC, a breakdown product of THC, in Book's blood sample. How long the carboxy-THC was in Book's system was not determined from the test.

drug; Book's confused and slurred speech; uncoordinated, slow, and unsteady movements; Book's admission to his use of hydrocodone; and Book falling asleep despite medical personnel's attempts to keep him awake. This was more than sufficient evidence to support a finding of intoxication.

We find the evidence was sufficient for the trial court to find that Book was impaired, drugs were present in Book's body at the time of the accident, and a causal connection between the proscribed substance and the defendant's impaired ability.[6] *See State v. Spain*, 759 S.W.2d 871, 875 (Mo.App. E.D. 1988) (holding testimony that defendant drove on the wrong side of the street, failed to heed two stop signs, had slurred speech, an unsteady walk, and an odor of alcohol on his breath, was "more than sufficient evidence to support a finding of intoxication."). Therefore, the trial court did not err in finding Book guilty of DWI.

### Careless and Imprudent Driving Conviction

Section 304.012.1 provides:

> Every person operating a motor vehicle on the roads and highways of this state shall drive the vehicle in a careful and prudent manner and at a rate of speed so as not to endanger the property of another or the life or limb of any person and shall exercise the highest degree of care.

---

[6] Book also argues "this Court must consider *de novo* the statutory remedy provided in § 577.037.5" providing for dismissal of a count alleging DWI when the State's laboratory results show less than .08% blood alcohol content, unless one of the three exceptions apply. Book then argues the three exceptions do not apply so this Court "must exonerate Book on account of the application of § 577.037.5." This argument was not raised in Book's point relied on. Rule 84.04(e), which governs arguments in appellate briefs, expressly limits arguments "to those errors included in the 'Points Relied On.'" *See Osthus v. Countrylane Woods II Homeowners Ass'n*, 389 S.W.3d 712, 716 (Mo.App. E.D. 2012) (holding "an appellant's brief also must contain an argument section that substantially follows each "'Point Relied On'"). "Issues not encompassed by the point relied on and raised only in the argument portion of the brief are not preserved for review." *Cordes v. Williams*, 201 S.W.3d 122, 131 (Mo.App. W.D. 2006); *see also Hamilton v. Hamilton*, 340 S.W.3d 197, 201 (Mo.App. W.D. 2011) (holding "[i]f a party fails to substantially comply with Rule 84.04, which requires the appellant to 'identify the trial court ruling or action that the appellant challenges,' then the argument is not preserved for appeal.") (quoting Rule 84.04(d)(1)(A)). As such, we only review Book's claim of error raised in his point relied on: trial court error in finding Book guilty of DWI and careless and imprudent driving because the State failed to prove beyond a reasonable doubt Book was impaired while driving, had any drugs in his body, and that any drug or drugs caused Book to be impaired.

When applied in this case, the elements of the careless and imprudent charge include that: (1) defendant operated a motor vehicle on a highway, (2) in an unsafe manner, (3) thereby endangering the property of another, and (4) in so doing operated a vehicle in a careless and imprudent manner. § 304.012.1; *see* **State v. Goeman**, 386 S.W.3d 873, 877-78 (Mo.App. S.D. 2012). Book argues there was insufficient evidence to prove the third and fourth elements of careless and imprudent driving; i.e. that he endangered the property of another, and that he operated his automobile in a careless and imprudent manner. We disagree.

As to the element of endangering the property of another, Book argues "there is nothing to suggest that Book, as opposed to someone else, was not the owner" of the "poles and handrail"; "[t]here is no direct evidence of ownership either of the utility pole that held an automatic street light or of the second pole"; and "no evidence of Book's address, his residence, or what real property he owned[.]" Book's argument fails.

Brewer testified he observed Book swerve into the oncoming lane of traffic, hit "a bunch of poles," and go through "people's yards." The trial court noted Brewer's testimony included the term "yards" in plural indicating Book drove through multiple yards. In considering the State's evidence, neither the trial court nor this Court is required to suspend its commonsense. **Spain**, 759 S.W.2d at 875. It was a reasonable inference for the trial court to determine Book did not own the *two* utility poles he struck, one of which held an automatic street light; the residences containing the yards he drove through; or the handrails he struck.

Book also argues the evidence does not support he was careless and imprudent "by leaving the roadway and striking a pole." He argues there was no accident reconstruction evidence, photographs, charts, etc., and without that evidence, "the circumstances of the crash were proved only by the eyewitness testimony of the bicyclist Brewer[.]" As we noted above,

14

the trial court was free to believe some, none, or all of Brewer's eyewitness testimony. It is not our function to reweigh and assess Brewer's credibility and reliability. *Breedlove*, 348 S.W.3d at 814.

Considering the evidence and the reasonable inferences derived therefrom in the light most favorable to the judgment, *Graves*, 358 S.W.3d at 539, we find there was sufficient evidence for the trial court to find beyond a reasonable doubt that Book endangered the property of another and operated the automobile in a careless and imprudent manner. The trial court did not err in finding Book guilty of careless and imprudent driving. Book's Point I is denied.

*Point II:  Probable Cause Statement is Adequate*

Rule 21.01 requires that all misdemeanors be prosecuted by indictment or information. The information "shall be supported by a statement of probable cause[.]"  Rule 21.02.  In his second point, Book argues the probable cause statement in this case fails because it did not mention "operating a motor vehicle, driving, or any such terminology[,]" which is an essential element of both the DWI and careless and imprudent driving charges.  Book argues the inadequate probable cause statement results in the misdemeanor information being "fatally defective."

**Standard of Review**

"Failure to allege an essential element in the information does not automatically require reversal." *State v. Williams*, 126 S.W.3d 377, 380 (Mo. banc 2004).  Rule 24.04(b)(2) provides "[d]efenses and objections based on defects . . . in the indictment or information . . . may be raised only by motion before trial. . . . Failure to present any such defense or objection . . . constitutes a waiver[.]"  There is nothing in the record before this Court indicating Book raised an objection to the sufficiency of the probable cause statement making the misdemeanor

15

information fatally defective by motion before trial. Because Book did not contest the sufficiency of the information (via the probable cause statement) until after his conviction, he is only entitled to a narrow review by this Court. *Id.*

When the sufficiency of an information is raised for the first time after a verdict or judgment, the information will be deemed insufficient "only if it is so defective that (1) it does not by any reasonable construction charge the offense of which the defendant was convicted or (2) the substantial rights of the defendant to prepare a defense and plead former jeopardy in the event of acquittal are prejudiced." *State v. Parkhurst*, 845 S.W.2d 31, 35 (Mo. banc 1992). In addition, Book will only be entitled to relief if he can demonstrate actual prejudice. *Id.* "A defendant suffers actual prejudice if the information or indictment was either so deficient that the defendant was not placed on notice as to what crime he or she was being charged with or was so lacking in clarity that the defendant was unable properly to prepare a defense." *Williams*, 126 S.W.3d at 381.

**Analysis**

Because Book did not file a motion challenging the information before trial, he waived his right to raise this issue on appeal unless he can show one of the grounds laid out in *Parkhurst*, 845 S.W.2d at 35, and can demonstrate actual prejudice. Following our limited review, we find Book does not satisfy either ground and has failed to demonstrate actual prejudice.

Rule 21.04 requires a statement of probable cause include the name of the accused, date and place of crime, facts that support a finding of probable cause to believe a crime was committed by the accused, a statement that the facts are true, and a signature on a form bearing notice that false statements made therein are punishable by law. We acknowledge Missouri law

16

is clear that if a probable cause statement does not contain sufficient facts to amount to probable cause, the information is defective. *See State v. Crump*, 223 S.W.3d 915 (Mo.App. S.D. 2007). However, we find the probable cause statement in issue, along with the information, contains sufficient facts to amount to probable cause.

Here, the misdemeanor information provided "[t]he facts that form the basis for this information and belief are contained in the *attached probable cause statement*, *made a part hereof* and submitted as a basis upon which this [c]ourt may find the existence of probable cause." (Emphasis added). The facts supporting a finding of probable cause were: "Book was suspected of being intoxicated and causing an accident. Book's blood was taken at the hospital and returned with a positive result for the drug THC."

Furthermore, the body of the information specifically charges Book with the class B misdemeanor of DWI in violation of section 577.010 in that he "*operated a motor vehicle* while under the influence of a drug or drugs." (Emphasis added). The information, including the probable cause statement, clearly charges Book with the offense of DWI by including the two elements of DWI: Book operated a motor vehicle, and he did so while in a drugged condition. In addition, the information contained the specific charge and the statute violated thereby allowing Book to prepare a defense.

Book's claim that the failure to mention "Book was operating a motor vehicle is fatal" is similar to the claim made by the defendant in *State v. Austin*, 861 S.W.2d 334, 336 (Mo.App. S.D. 1993). In *Austin*, the defendant argued the information was insufficient because the description of the violation did not allege facts that defendant was operating a motor vehicle. *Id.* We disagreed and held the information alleged defendant unlawfully operated his motor vehicle,

17

described the violation "intoxicated driving 1st offense," and advised defendant's conduct was in violation of section 577.010. ***Id.***

Like the defendant in ***Austin***, Book's claim fails because the probable cause statement provides Book was intoxicated and caused an accident, the information alleged Book unlawfully operated his motor vehicle while under the influence of drugs, and that he violated section 577.010.

This same is true for the charge of careless and imprudent driving under section 304.012. The information specifically charged that "[Book] *operated a motor vehicle* on a public road . . . in a careless and imprudent manner[.]" (Emphasis added).

Book's argument in his second point requires this Court to reiterate that we are not required to suspend our commonsense in reviewing cases. ***Spain***, 759 S.W.2d at 875. Book was sufficiently apprised that he was charged with DWI and careless and imprudent driving, including specific allegations in the information that he "operated a motor vehicle under the influence of a drug or drugs" and "operated a motor vehicle . . . in a careless and imprudent manner[.]" Although Book waived his right to raise this issue on appeal by failing to file a motion before trial, we find in our limited review that the information was sufficient as it plainly alleged Book violated sections 577.010 and 304.012 when he "operated a motor vehicle." *See* ***State v. Richter***, 241 S.W.3d 368, 369-70 (Mo.App. S.D. 2007) (finding "the information plainly alleged that defendant was driving 108 mph in a 70 mph zone, and charged him with speeding" despite an incomplete blank in the information). We conclude Book was given more than adequate notice that he was charged with DWI and careless and imprudent driving under the probable cause statement and information, which complied with the requirements of Rule 21.04. Furthermore, his right to prepare a defense were not prejudiced.

We find the trial court did not err in finding the statement of probable cause stated sufficient facts to support the charges of DWI and careless and imprudent driving. Book's Point II is denied.

The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., C.J. - OPINION AUTHOR

NANCY STEFFEN RAHMEYER, P.J. - Concurs

DANIEL E. SCOTT, J. - Concurs