

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　Plaintiff-Respondent,　　　　　　)
　　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　　)　　　No. SD38190
　　　　　　　　　　　　　　　　　　)
ALISHA LOUISE BUELL　　　　　　　)　　　**Filed:  July 23, 2024**
　　　　　　　　　　　　　　　　　　)
　　　Defendant-Appellant.　　　　　　)

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

The Honorable J. Ronald Carrier, Judge

**<u>AFFIRMED</u>**

　　　Alisha Louise Buell appeals the trial court's judgment convicting her of driving while intoxicated ("DWI"), under section 577.010,[1] following a bench trial.  Buell asserts in her sole point on appeal that there was insufficient evidence to support the trial court's judgment convicting her of DWI.  Finding no merit to Buell's point, the trial court's judgment is affirmed.

---

[1] All references to statutes are to RSMo Supp. 2017, including changes effective August 28, 2017, unless otherwise indicated.  Buell was charged with and convicted of the offense as a class B misdemeanor. Section 577.010.2(1).

**Factual Background and Procedural History**

On March 17, 2022, at approximately 10:00 a.m., Yvonne Van Camp was driving her vehicle north on National Avenue in Springfield, Missouri, when she entered the left-hand turn lane in order to turn west onto Battlefield Road at the intersection of National Avenue and Battlefield Road. The left-hand turn lane onto Battlefield Road had a green arrow signal.

At the same time Van Camp was attempting to turn left from National Avenue onto Battlefield Road, Buell was driving her vehicle southbound on National Avenue toward the intersection. The southbound lanes of traffic on National Avenue at the intersection with Battlefield Road had a red light. Buell failed to stop at the red light and "blew through the intersection." The left front driver's side of Buell's vehicle struck the left front driver's side of Van Camp's vehicle. After striking Van Camp's vehicle, Buell's vehicle continued to travel over a yield island for traffic turning right from Battlefield Road onto southbound National Avenue, through the turn lane, over another curb, and through the grass area in front of a United Missouri Bank ("UMB") located at the southwest corner of National Avenue and Battlefield Road. The grass area in front of UMB showed no evidence that Buell applied her brakes.[2] Buell's vehicle finally came to rest within inches of the UMB building. After coming to rest, Buell then drove her vehicle back across the grass area in front of UMB, turned right onto Battlefield Road, and then turned right again onto southbound National Avenue. Buell pulled into the parking lot behind UMB off National Avenue.

Officer Benjamin Kaufman, a traffic officer with the Springfield Police Department, responded to the accident. Officer Kaufman is a certified crash reconstructionist and a drug recognition expert. Upon contact with Buell, Officer Kaufman noticed Buell had rapid speech

---

[2] Van Camp also testified that she did not see brake lights on Buell's vehicle as it traveled toward UMB.

and "very sudden and jerky" movements, all of which were indicators for potential stimulant drug use. Officer Kaufman indicated to Buell that she appeared to be "com[ing] down off methamphetamine." Buell stated that methamphetamine was present in her system, but that she was not coming down off of it. Buell stated she used methamphetamine one and a half to two and a half days prior. Buell also stated that, prior to the collision, she had taken methadone and fentanyl; that she had taken prescribed methadone at approximately 5:00 a.m. the morning of the accident; and that she had been taking the prescribed methadone for three days and the prescription was to help her "recover from a half a gram a day fentanyl habit." Buell informed Officer Kaufman that she last used fentanyl three days prior to the accident.

Officer Kaufman inquired of Buell as to whether her prescribing doctor had recommended that she not drive while using the methadone prescription; Buell answered that the doctor had not. Buell stated that she "didn't think it was that bad" referencing the effects of the prescription methadone, but that she also had been pulled over the night prior to the collision. Officer Kaufman overheard Buell state to someone on the phone that she "shouldn't be driving on [methadone]" and she was "not doing good."

Based on Buell's physical indicators of drug use and Buell's admission to recently using methadone, methamphetamine, and fentanyl, Officer Kaufman conducted standard field sobriety tests at the scene of the accident to determine if Buell was impaired. The field sobriety tests included the horizontal gaze nystagmus test, the vertical gaze nystagmus test, the walk and turn test, and the one-leg standing test. Officer Kaufman testified that Buell was unable to complete the horizontal gaze nystagmus properly; turned incorrectly during the walk and turn test; and had trouble balancing during the one-leg test. He also testified that Buell showed zero indicators of impairment on the horizontal gaze nystagmus test due to her inability to complete the test; one

3

out of eight indicators on the walk and turn test due to her incorrect turn; and three out of four indicators on the one-leg stand due to her inability to keep her balance.[3] Officer Kaufman did not conduct a full drug recognition evaluation. Officer Kaufman explained that a full drug recognition evaluation is used to determine what categories of drugs a person is impaired by, not necessarily to determine impairment alone. The officer stated that Buell's indicators of impairment were consistent with the drugs she admitted to having used.[4] The officer also explained, "I don't necessarily do a full drug recognition evaluation, but I employ that training anytime I'm doing an investigation where there's impairment involved." Officer Kaufman clarified that a determination of impairment is based on the totality of the circumstances and opined that based on the totality of the circumstances, Buell was "too impaired to safely operate a motor vehicle."

## Point on Appeal

In her sole point on appeal Buell contends the State "did not establish beyond a reasonable doubt that [she] was intoxicated or impaired due to drugs when the State failed to demonstrate a sufficient amount of drugs present in her system to cause impairment or the limited signs of impairment could be attributed to fentanyl, methamphetamine, or methadone" and, therefore, the trial court erred in overruling her motions for judgment of acquittal, finding her guilty, and sentencing her for DWI. We disagree and affirm the trial court's judgment.

---

[3] There was no evidence presented as to the number, if any, of indicators during the vertical gaze nystagmus test.

[4] Officer Kaufman requested, and Buell consented to, a blood sample for drug testing. Two medical technicians were unable to procure a blood sample; Officer Kaufman requested that there be no further attempts.

<u>Standard of Review</u>

"The trial court's findings have the force and effect of the verdict of a jury in a court-tried criminal case." *State v. Shands*, 661 S.W.3d 381, 382 (Mo. App. S.D. 2023). "Accordingly, the standard used to review the sufficiency of the evidence in a court-tried and jury-tried criminal case is the same." *Id.* (internal quotations and citations omitted). "'[W]e review a trial court's ruling on a motion for judgment of acquittal to determine whether there was sufficient evidence from which the trial court could have found the defendant guilty beyond a reasonable doubt.'" *State v. Sinks*, 652 S.W.3d 322, 334 (Mo. App. E.D. 2022) (quoting *State v. Peeler*, 603 S.W.3d 917, 920 (Mo. App. E.D. 2020)). "Appellate review of sufficiency of the evidence is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt." *State v. Lammers*, 479 S.W.3d 624, 632 (Mo. banc 2016).

*State v. Gomez*, 672 S.W.3d 113, 119 (Mo. App. S.D. 2023).

In our review, this Court accepts as true all evidence, and reasonable inferences therefrom, favorable to the State and disregards all contrary evidence and inferences. *State v. Hovis*, 684 S.W.3d 748, 750 (Mo. App. S.D. 2024). We grant great deference to the trier of fact. *Id.*

<u>Analysis</u>

One commits the offense of DWI "if he or she operates a vehicle while in an intoxicated condition." Section 577.010.1. The necessary proof to establish impairment from drugs is no different than that required to establish impairment from alcohol. *State v. Honsinger*, 386 S.W.3d 827, 830 (Mo. App. S.D. 2012).

[A] determination that a defendant is "under the influence" of a proscribed substance (alcohol, controlled substance, or drug) to satisfy the "intoxicated condition" element[] of the offense of driving while intoxicated under [section] 577.010.1, is composed of three components: (1) *impaired ability*—the defendant's impaired ability in any manner to operate a motor vehicle at the time of the alleged offense; (2) *presence of the substance*—the presence of the proscribed substance in the defendant's body at the time of the alleged offense; and (3) *causation*—the causal connection between the presence of the proscribed substance and the impaired ability to operate a motor vehicle.

5

***State v. Hoy***, 219 S.W.3d 796, 802 (Mo. App. S.D. 2007) (footnote omitted).[5]

Buell claims on appeal there was insufficient evidence before the trial court to support a finding of "a sufficient amount of drugs present in her system to cause impairment[,]" the presence component, or that her impairment "could be attributable to fentanyl, methamphetamine, or methadone[,]" the causation component.

As to the second component required to find intoxication, the presence of a proscribed substance in Buell's system, there was sufficient evidence before the trial court to support a finding that methadone, methamphetamine, or fentanyl was present in her system. Buell told Officer Kaufman that she had a "half a gram a day fentanyl habit"; that she had recently used fentanyl; that she had also recently used methamphetamine and methamphetamine was present in her system; that she had been taking prescribed methadone for three days; and that she had taken methadone the morning of the collision. Officer Kaufman testified that based on his observations, Buell's behavior was consistent with and an indicator of potential stimulant drug use. Officer Kaufman told Buell that she appeared to be coming down from methamphetamine to which Buell responded that she was not "coming down from methamphetamine," but that it was in her system. Buell's driving behaviors are also evidence of the presence of drugs in her system. There was evidence Buell "blew through" a major intersection at 10:00 a.m. in the

---

[5] At trial, defense counsel admitted Buell's impaired ability. Defense counsel's admission waives appellate review of the sufficiency of the evidence to support that component. *See **State v. Denzmore***, 436 S.W.3d 635, 643 (Mo. App. E.D. 2014) (refusing appellate review of the sufficiency of the evidence to support an offense that defense counsel admitted in open court the defendant had committed). Buell's point on appeal appears to recognize this waiver in that it asserts insufficient evidence to find the presence of a sufficient amount of drugs to cause her impairment. This Court will review the sufficiency of the evidence to support components (2) and (3) required for a finding of "intoxicated condition" for purposes of section 577.010.1.

morning, traveled through lanes of traffic and over a yield island and curb and careened toward a brick building at a high rate of speed without braking, landing only inches from the building and then proceeded to travel back onto the roadway immediately thereafter.

> Here, the presence of drugs in [defendant's] body was supported by not only direct evidence; i.e., [defendant's] own statement, but also the reasonable inference drawn from circumstantial evidence including [defendant's] extreme and dangerous driving, that [defendant] was not "aroused" by his extreme driving and contact with two utility poles and railing, and the officers' observations of [defendant's] behavior and physical indicators of drugs present in [defendant's] body at the time of the accident.

*State v. Book*, 436 S.W.3d 671, 679 (Mo. App. S.D. 2014); *see also* **Honsinger**, 386 S.W.3d at 831 (determining the appellant's admission of drug and alcohol use and the smell of marijuana was substantial evidence that a proscribed substance was present in appellant's system). The trial court may infer that substances are present in a defendant's body without an alcohol or drug evaluation. **Book**, 436 S.W.3d at 679. "There has never been a requirement in a driving while intoxicated case that a drug or alcohol evaluation be performed in order to find a defendant guilty of the charge." **Honsinger**, 386 S.W.3d at 831. Therefore, there was no requirement here that a drug or alcohol evaluation be performed to establish the presence of drugs in Buell's system to cause impairment to find her guilty of DWI.

There was also sufficient evidence before the trial court to support the third component required for a trier of fact to find intoxication – that the presence of fentanyl, methamphetamine, or methadone caused Buell's impairment. Buell's admission to her recent use of drugs combined with Officer Kaufman's testimony that Buell's behavior and speech were consistent with use of the substances Buell admitted to ingesting is sufficient evidence of causation. *Id.* ("Recent consumption of an intoxicant coupled with signs consistent with intoxication evidences causation.").

7

Buell's contention that there was insufficient evidence before the trial court to support a finding of intoxication is based, in large part, on her argument that "[t]he signs of impairment presented to the trial court here are far less than those found to be sufficient for a finding of guilt" in other cases. Buell's argument ignores this Court's standard of review. This Court accepts as true all evidence, and reasonable inferences therefrom, favorable to the State and disregards all contrary evidence and inferences. *Hovis*, 684 S.W.3d at 750. The appellate court grants great deference to the trier of fact. *Id.* Officer Kaufman admitted that, based on the field sobriety tests given to Buell, there were "not a ton" of indicators for intoxication. Regardless, there was evidence before the trial court that Buell ingested methamphetamine, fentanyl, and methadone prior to the collision, that Buell's behavior was consistent with ingestion of such drugs, and that, in Officer Kaufman's opinion, Buell was too impaired to safely operate a motor vehicle based on the totality of the circumstances. The trial court was free to believe this evidence and disregard any contrary evidence.

## Conclusion

There was sufficient evidence before the trial court to support a finding of intoxication. Buell's point is without merit. The trial court's judgment is affirmed.

JENNIFER R. GROWCOCK, C.J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS